RICHARDS and LLOYD, JJ., of the Sixth Appellate District, sitting in place of MIDDLETON, P. J., and BLOSSER, J., of the Fourth Appellate District.

THE OCCO REALTY CO. *v.* THE NEW YORK, CHICAGO & ST. LOUIS RD. CO. ET AL.

(Decided September 30, 1929.)

*Messrs. Bernsteen & Bernsteen* and *Mr. David Perris,* for plaintiff.
*Messrs. Tolles, Hogsett & Ginn* and *Mr. Jos. F. Smith,* for defendants.

SULLIVAN, J.  This is a hearing on appeal from the common pleas court of Cuyahoga county, and an injunction is sought by plaintiff, the Occo Realty Company, against the New York, Chicago & St. Louis Railroad Company and the city of Cleveland, to enjoin them from changing the grade of certain streets which front the property of the plaintiff, known as Kinsman road and Grand avenue in the city of Cleveland.  The land of the abutting property owner, the plaintiff, consists of several acres of very valuable land at the southwest corner of the

streets named, and it is bounded on the south by the right of way of the railroad. It is improved by building construction upon the west side of Kinsman road and upon the south side of Grand avenue. There are other buildings upon the land, used by numerous lessees, and the property is largely devoted to manufacturing or storage purposes. The change of the grade which is sought to be enjoined, without compensation and damages being first paid, arises out of an ordinance adopted by the citizens of Cleveland in 1919, under the terms of which the Cleveland Union Terminals Company, and the railroads participating, contracted with the municipality to construct a union depot on the Public Square, together with all approaches necessary thereto.

It appears from the record that there was a general agreement between the municipality and the railroads to eliminate certain grade crossings, so that there could be rapid transit for a large number of trains carrying passengers to the Terminal Union Station.

From East Thirty-seventh street to the Terminal Station is the approach proper to the Union Depot, but from that street east to the city limits the railroads using the Terminal Station use the right of way of what is known as the Nickel Plate Railroad, and it became necessary, so far as this railroad is concerned, in order to travel over it at express train speed, to eliminate these grade crossings, so that the purposes of swift travel to accommodate an ever-increasing population might be accomplished, and the agreement between the railroads and the municipality is based upon contracts, ordinances,

and other instruments of writing necessary to carry out the common purpose.

One of the means of the fulfillment of this general purpose was a suit filed by the city against the railroad company wherein the necessity of the elimination of these crossings was alleged, and to which the plans for the enterprise, on the part of the city, were attached. Proper pleadings were filed, and the common pleas court ordered the grade crossings eliminated in accordance with the plans recommended by the railroad company, and one of the crossings involved the land of this abutting property owner and the streets herein mentioned. The order of the court and its general finding provided specifically that the grade crossing at Kinsman road be eliminated by the construction of a bridge, and it was further provided that this bridge should connect with streets by approaches and certain established grades. This order is dated May 31, 1928. On June 8, 1928, the terms of the journal entry were incorporated in the city ordinance and duly passed by the city of Cleveland, so that the journal entry was translated into an ordinance of the municipality, which provided for the elimination of this particular grade crossing at Kinsman road, and there was a further provision under the statute that all claims for damages which might be filed on the part of abutting property owners should be judicially inquired into *after* the completion of the improvements.

While the general procedure for the elimination of this grade crossing was in progress, the railroad and the municipality, on March 4, 1929, proceeded with the work provided by order of court, ordinance,

and agreement, relative to the special work herein outlined with respect to Kinsman road, as to bridges, approaches, etc., and on that date the municipality adopted a resolution declaring its intention to order and establish the grade of Kinsman road and Grand Avenue Southeast, in accordance with the court order and the ordinance referred to, and there was a provision in this resolution detailing a description of the exact changes, and it provided that notice of the passage of the resolution should be published and served upon abutting property owners, as provided by law, and this was done with others and with respect to plaintiff herein, in conformity to and in consonance with the provisions of this resolution, and on March 18, 1929, plaintiff in this cause filed two claims for damages against the city of Cleveland in the sum of $1,000,000, and $30,000, respectively, and on May 6, 1929, the municipality through its council passed an ordinance which recited the prior resolution and the filing of claims for damages thereunder, and in it was a provision that all claims for damages arising out of the change of grade should be judicially inquired into when the improvement was finished, and with respect to this the director of law was to make application for a jury, in the manner provided by law, in the proper courts of Cuyahoga county, after the completion of the improvement, with the end in view of determining the damages resulting to property affected because of the change of grade at Kinsman road and Grand avenue, and the measure itself was declared to be one of emergency, and accordingly took effect immediately upon its passage.

From the blueprints and drawings it will be ob-

served that the corner of Grand avenue and Kinsman road will be approximately one and one-half feet higher than it is at present. On the side of plaintiff's property, Kinsman road will increase in height above the present grade approximately eighteen feet, and therefore at the southern end of the abutting property Kinsman road itself will be eighteen feet higher than it is now, but according to the blueprints and drawings the road is to be built up to that grade, and it appears from the record to be absolutely necessary, in order to prevent the street as raised from slipping off, disintegrating, and falling on private property, to construct a concrete retaining wall for the protection of Kinsman road and to hold the dirt under the new grade in conformity thereto, and a bridge is to be constructed crossing Kingsbury run on the tracks of the Nickel Plate Railroad, New York Central Railroad, and the Rapid Transit Company and other carriers. On the south side of the run, Kinsman road of course will descend a grade similar to the raise thereof, and Grand avenue, which extends westerly, and is at right angles to Kingsbury run, will be approximately one and one-half feet to two feet higher at its intersection with Kinsman road.

It may be said in passing that Kinsman road and Grand avenue are now accessible in the ordinary way to the plaintiff.

Under the authority of the journal entry and the ordinances, the railroad company is doing the physical work in connection with the change of grades, but at the request and under the supervision of the city, and for what appears to be a sufficient reason, which includes the better engineering facilities of

the railroad; but with respect to this work the railroad after all is the instrumentality of the municipality.

Thus was created a situation which resulted in the suit of plaintiff against the defendants in the common pleas court, wherein the substance of the allegations of the petitions was that the easements of light, air, and access would be so affected by the improvement that grave and irreparable injury would result, and a temporary injunction was sought, as well as a final one, to prevent the defendants from proceeding with the work until plaintiff had received compensation therefor, or until at least compensation and damages were provided for by lawful assessments.

The final judgment of the common pleas court was incorporated in a memorandum opinion which is as follows:

"That the work sought to be enjoined does not involve the erection of piers or abutments upon or against plaintiff's property, but that it is for the purpose of making or repairing roads, and that the plaintiff has a full complete and adequate remedy for every damage resulting to him, be it direct or consequential under Article I, Section 19 of the State Constitution, and that Section 8888, General Code, does not apply in the instant case.

"No substantial rights of plaintiff company are taken without due process of law; on the contrary it has an adequate remedy at law for every resulting damage. This is work of great public importance, and in view of the evidence, the application of any other doctrine would be inequitable and contrary to the Ohio decisions. The injunction is therefore

refused, petition dismissed, and judgment for defendants for costs. Exceptions. Notice of appeal. Bond $200.00. Thomas M. Kennedy, J."

Viewing the entire record, and keeping in mind the briefs and arguments of counsel, there seems to be but one point of difference between the parties in this cause. What the railroad and the city want by way of public necessity, and in conformity with law and ordinances, naturally meets no objection from the plaintiff, and the main reason of course is that the Legislature, having the authority, authorized the joint action of the defendants in the premises. That a change of grade can be made when duly authorized meets with no doubt or denial; that the growing needs of a vast city demand innovations that correspond with the care and protection of the public by way of the furnishing of transportation facilities there can be no question; that the plaintiff would be damaged is admitted, not only by the passage of the ordinance, but by the direction of the director of law to proceed judicially to determine the amount of same. This is true even though the defendants, as to the question of compensation, do not readily acquiesce in the claim of plaintiff that the record justifies a demand for compensation as well as for damages on the ground that the interference with light, air, and access to the property is an interference with an incorporeal hereditament, and, as such, under the authorities, constitutes a taking, in a legal sense, of the property. The reason, the defendants argue, that there is no valid claim for compensation, is based upon their theory that, so far as the land of the abutting property owner is concerned, they do not intend to use the smallest por-

tion of it, and that, instead of erecting piers, abutments, etc., they are to confine themselves exclusively to the construction of a retaining wall to hold the streets steady in their places, in conformity to the grade established, and to prevent the falling away onto alien property of the accumulation that necessarily attends upon the raise of the grade to the extent under contemplation.

That there should be a reasonable sum paid for damages is not disputed by defendants. The only question is whether it is compulsory under the law and authorities that money equivalent to the damages, and even by way of compensation, shall be paid according to the provisions of the ordinance, after judicial inquiry, at the completion of the work, or whether it shall be paid in advance or assessed in such a manner that the amount is not only determined but its payment secured.

Therefore what we have to say upon this subject will be confined to the question whether these claims shall be paid in advance. The only other question then remaining, regardless of how we decide the question immediately under discussion, would be whether there is a plain and adequate remedy at law, for, if there is, then it is equally admitted that the law will not sustain the injunctive process, because that is an extraordinary remedy and is only resorted to or granted by the courts if there is not a plain and adequate remedy at law. It is equally conceded by able counsel that, in the determination of this question, the court has a right to call into requisition that principle which is known as the balancing of the equities, for if it should appear that, even though technically, the relief should be granted, yet,

if the granting thereof would produce a private or public injury which now does not exist, then the application of this doctrine would prevent the granting of the writ. It is this principle that was the basis of the doctrine in *Quinby* v. *City of Cleveland,* (C. C.), 191 F., 68, 76, wherein the injunction was refused by reason of the balancing of the equities, and in doing so the court uses the following language, which is very pertinent in the consideration of the case at bar:

"In so far as the first complaint of the plaintiff is concerned, I am of the opinion that the damages to his property are such damages as would arise in an ordinary change of grade case, and that bearing in mind the provisions of Article 1, Section 19, of the State Constitution, it is competent for the State Legislature to pass such legislation as the so-called grade crossing act (Sections 8863-8907, General Code), and that the municipalities legislating under the provisions of that act can proceed with an improvement such as the one involved in this case, and in so far as the property rights in question are concerned, provide that compensation be made after the improvement has been completed. This is work of a great public necessity and importance, and an application of any other doctrine would neither be equitable nor in accordance with the Ohio decisions."

Now, when we come to consider the question whether there is a plain and adequate remedy at law, we find from an examination of the law and record that, under Section 8885, General Code, and the ordinance introduced in the record, it becomes the bounden duty of the law director to appeal to the

court for the impaneling of a jury in proceedings of appropriation, in order to assess and determine the compensation and damages that may result from the doing of the things which the defendants contemplate, and which are under process at the present time, as a temporary bridge is now being used in order to accommodate travel so that serious congestion shall not follow.

In this connection we have the Supreme Court of Ohio for authority to the effect that, if the director of law fails to proceed in the manner just noted, the property owner has the right to sue in mandamus to compel such procedure.

Again that there is an action at law for damages ensuing, upon completion of the work, there can be no question, and in these proceedings the question of compensation as well as damages can be taken into consideration in determining the total loss by reason of the acts of defendants, sought to be enjoined.

Again, if the railroad company proceeded defiantly to disobey the injunction of the ordinance that all damages shall be judicially inquired into and recompensed at the completion of the work, then the property owner has a right to make proper application to a court to compel the railroad company to commence an appropriation suit in order to determine the amount that should be paid. This right we think is based upon Section 11084, General Code, and other sections immediately following.

Thus it would seem to us that no possible financial peril can result to the plaintiff if the provisions of the ordinance are carried out, and payment for compensation and damages be assessed and paid at the

completion of the work, instead of at the present time, when to do so at once would be to retard the consummation of a public necessity, upon the existence of which depends the transportation and safety of the public.

Here we find a balancing of the equities intermingled with the rights and remedies which apply to actions at law, to which resort must be had before the granting of a restraining order.

In the discussion of this question we must not forget that, according to the record, the improvements are for a change of grade, and the result of the proceeding is inevitable, if statutory provisions are held sacred and if ordinances necessary for the granting of the power to municipalities have been duly passed.

· We do not think, from the record, that there is any showing that other than retaining walls are to be constructed, and this class of structure is not, in our judgment, piers and abutments to be constructed on any portion of the plaintiff's land. Piers and abutments are not even to be constructed in the street, as nothing but a retaining wall is necessary to accomplish the purpose desired, according to the blueprints and the drawings; but even if it is a question of retaining walls or abutments, if they are to be planted in the street because of the public necessity for a change of grade, then the right exists so to do, and the penalty is the payment of whatever compensation and damages that arise, and, even though no part of the land that belongs to the abutting property owner be taken in any wise, yet if access, light, and air are interfered with, they are such property rights under the authorities that com-

pensation must be paid; but under the record of the case, proper provisions have been made so that the question of award may be determined after the completion of the project instead of before without interfering with the progress of the important work and causing a delay not commensurate with the theory of payment in advance, when by conforming to the provisions of the ordinance for payment at the completion of the work the property owner is put to no peril or danger.

Then and thereupon no rights are violated under Article I, Section 19, of the Ohio Constitution, nor under *Village of Port Clinton* v. *Fall,* decided by the Supreme Court of Ohio, 99 Ohio St., 153, 161, 162, 124 N. E., 189, which discusses the words, "land or property," used in Section 8888, General Code of Ohio.

Our opinion as here laid down contemplates not only the question of damages arising from the change of grade, but compensation growing out of any taking of property under the authority cited, arising from limitation of access to or from the property, or stoppage of light and air, for by analogy, at least, the same rule would apply as to compensation after the property has been appropriated and the work completed as applies where payment is made before the completion of the work, as is insisted upon by able counsel for plaintiff. This principle of analogy is laid down by Lawrence, J., in *East End Banking & Trust Co.* v. *City of Cleveland,* 1 N. P. (N. S.), 493, 14 O. D., N. P., 33, and a careful reading of that opinion leads us to the conclusion that it constitutes in principle organic law. This learned judge concurs in what is unquestionably the

law—that the rights of abutting property owners in streets are property rights; but that these rights are not absolute, but affected by a paramount right in the public.

After a complete analysis of the principle of law involved, the learned judge at page 502 of 1 N. P. (N. S.), calls attention to *Crawford* v. *Delaware,* 7 Ohio St., 459, and *Cohen* v. *Cleveland,* 43 Ohio St., 190, 1 N. E., 589, 590, and we quote the following language of the Supreme Court in the latter case, as applicable to the case at bar:

"But the right of Cohen to damages is not determined adversely to him by these facts. He is not entitled to compensation under the letter of the Constitution, Article I, Section 19, but may be entitled to such compensation in analogy to that provision. Injuries resulting from the change of established grades in streets, though made in accordance with the statute, and without negligence or malice, and other injuries of a kindred character, have been held to afford ground for the recovery of damages against municipal corporations."

Judge Lawrence, in the *East End Banking & Trust Company case,* in arriving at his conclusions, at page 504 of 1 N. P. (N. S.), lays down the following:

"It seems to me that the principle is that an abutting owner has a right in the street, which is a property right, or in other words, is property, but this property right is subject to the right and duty of the municipality to put and maintain the street in suitable condition to answer all the purposes of the acquisition. To this public right all private rights of lot owners are necessarily subordinated

\* \* \* I am therefore of the opinion that while the right of the abutting property owner may be worked out as far as possible in analogy to the provisions of Article I, Section 19 of the Constitution, and that that constitutional provision not including by its terms the case of damages for abutting property owners, but the right to such damages being only within the spirit of the Constitution, it is competent for the Legislature to authorize the municipal corporation and other public corporations to level and improve streets without providing in advance for the assessment of compensation, or without providing means for the ascertainment and assessment of damages, otherwise than in an action at law to recover the same. If any other doctrine be accepted, a large portion of the statutes, which have been in force in this state from the very beginning of the state, would be invalid. \* \* \* I do not think that any public policy requires the application of so strict a rule as is contended for here by the plaintiff. There is no suggestion that the City of Cleveland is not amply responsible. It appears that the work which is contemplated is one of great public interest; and in fact our Supreme Court has said in a case that the changing of grade crossings is a matter which ought to be favored by the courts. That being so, and public interest being so greatly involved here, there being no danger of any substantial loss to the plaintiff except as to the mode of recovering his compensation, I do not think that any private right would be conserved or public right promoted by allowing this injunction, and it will therefore be refused.''

As we peruse the record in the present case, we

are constantly impressed with the fact that the only vital divergence in the conclusions of opposing counsel is that compensation and damages should be paid before the taking instead of after, and that it is a question which is not absolute and arbitrary, and therefore not one which compels the court to follow any of the authorities which disagree with the position we herein take.

The following is found by a study of the Constitution of 1802 and a comparison of that with the Constitution of 1851. In the former there is a clause that provides that property shall be held inviolate and always subservient to the public will, provided compensation is made to the owner therefor. When this clause was being interpreted by the courts, it was held that a compensation paid at any time, either before or after taking, was sufficient. The abuses that grew out of this arbitrary and definite provision gave rise to an amendment which was submitted to the Convention of 1851, and the result was a change which provided that the compensation was first to be paid in money to the owner. This amendment was the subject of much debate also, and the result of this discussion was a provision for instances where compensation need not be first paid, and one of these instances, in addition to "in time of war" and "or other public exigency imperatively requiring its immediate seizure," was the language applicable to the case at bar, "the making and repairing of roads," and hence we have the clause in the Constitution of Ohio as it now exists, which is Section 19, Article I, and reads as follows:

Section 19. Of the Inviolability of Private Property: "Private property shall ever be held in-

violate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.''

In the light of the decisions and authorities herein quoted, by analogy at least, as laid down in the opinion of Lawrence, J., herein noted, the claims for compensation in the instant case are just as firmly founded as damages arising by reason of change of grade. Therefore in our opinion there are no rights due the plaintiff under the Constitution and the law that are lost or in danger by reason of the payment after instead of before the completion of the improvement, and this is especially true when we come to weigh the equities in the case, for the delay would result in cessation of an improvement so vast that it is structural with the city; and the delay, when we contemplate the procedure necessary in case of disagreement as to price, might involve a period of time that would necessitate the destination of the Supreme Court of Ohio, for, if there was a substantial difference in figuration as to compensation and damages, the probability is almost a conclusion that the case would go to the final court, and, when we come to consider this fact, as was laid down in the case herein noted, decided by Federal Judge Day,

the peril to the public is so much greater than the peril to the private individual that, under a very ancient principle of equity, the court must decide the question where the less harm results, and especially does it become the court's duty in this particular case so to do, for the reason that we see no opportunity that may arise or contingency that may exist that would deprive the owner of the abutting property of any of his rights if he is paid afterwards instead of before the completion of the improvement; and thus it results that the private rights of the plaintiff, guaranteed by the Constitution, are held inviolate, and this is done without periling the rights of the public, whose right to use the streets in case of public necessity is superior to any easement which the individual may possess, and, again, in this respect, the reasoning of Judge Lawrence in the case herein cited is very applicable.

It is our unanimous opinion that in law the prayer for injunctive relief cannot be granted, for the reason that there is an adequate remedy at law, that the balancing of the equities are in favor of the plaintiff, under the record in the case, and that from every aspect of the case, should the writ be granted, a public injury would ensue that would be disastrous in its effect, especially when it is our view that all the rights which the plaintiff claims under the Constitution and the law have in no wise been impaired.

Holding those views, the writ is denied. An entry may be drawn accordingly.

*Writ of injunction denied.*

VICKERY, P. J., and LEVINE, J., concur.