THE STATE, EX REL. CINCINNATI GARAGE CO. ET AL., *v.*
BIRD ET AL.

[Cite as State, ex rel. Cincinnati Garage Co., v. Bird (1970),
25 Ohio Misc. 69.]

(No. A-238343—Decided October 23, 1970.)

Common Pleas Court of Hamilton County.

*Mr. Ambrose H. Lindhorst,* for relator-plaintiff.
*Mr. C. Robert Beirne,* for respondent-defendants.

BETTMAN, J. This case involves a determination whether the construction by the city of an elevated walkway above an existing sidewalk but within the confines of the street constitutes a taking of property rights of the abutting landowner for which it is entitled to compensation in damages or for which the court should issue a writ of mandamus ordering the city to institute an appropriation proceeding.

Plaintiff-relator is the owner of two parcels of real

estate in downtown Cincinnati. These parcels, which for clarity we will designate hereinafter as the Walnut-Third Garage and the Main-Third Garage, are each rectangular in shape and front approximately 195 feet on the north side of Third Street. Each extends northward from Third approximately 100 feet, one running west from Berning Alley to Walnut and the other east from Berning Alley to Main. Each parcel is improved with a modern parking garage which covers the entire lot (except for some setback of the Main-Third Garage from Berning Alley).

Defendant-respondent city of Cincinnati has constructed within the limits of Third Street a pedestrian walkway over the existing sidewalk approximately six inches to one foot from plaintiff's buildings. Two stairways lead from the existing sidewalk to the elevated walkway in front of the Walnut-Third Garage and these stairways, plus the walkway, extend approximately 116 feet along the Third Street frontage of the garage. Two more stairways lead from the existing sidewalk to the elevated walkway in front of the Main-Third Garage and these stairways, along with the elevated walkway, extend approximately 135 feet along the Third Street frontage of the Main-Third Garage.

From this elevated east-west walkway the city has constructed a thirty-foot wide pedestrian bridge running south across the balance of Third Street and the Fort Washington Way (another public street) to a large public plaza which surrounds the new Cincinnati Riverfront Stadium.

Plaintiff claims that as a result of the construction of this elevated pedestrian walkway and bridge:

"It has suffered and will continue to suffer an immediate deprivation of air and light; that the view on the south elevation of its buildings has been and will continue to be impaired; that its buildings will become subject to the hazards of additional pedestrian traffic; that its property will be subject to immense hazards of vandalism; that sanitation problems will occur; that its buildings, personal property, personal property in its care, employees,

invitees, and business invitees will be subject to greatly increased and varied sources of danger; that the means of ingress and egress of its property and buildings have been and will continue to be hindered; that its buildings will depreciate earlier than normal; that its cost to maintain its buildings has been and will continue to be increased; that its ability to maintain its buildings has been and will continue to be impaired; that it has been and will be deprived of putting its buildings and property to a higher and better use in the future; that the marketability of its property has been and will continue to be seriously reduced; and that it will incur many other additional damages.''

Plaintiff prays damages in the sum of $1,250,000, or in the alternative that the court issue a writ of mandamus directing respondent-defendants to institute appropriation proceedings.

Defendants demurred to plaintiff's amended petition and a hearing was held thereon, at which by agreement four exhibits were introduced. Exhibits 1 and 2 show the city's denial that any damages are due plaintiff and its refusal to commence appropriation proceedings; exhibit 3 shows generally how the pedestrian bridge runs from the Stadium Plaza to the north side of Third Street; exhibit 4 shows the exact specifications of the elevated walkway and stairways and their relation to plaintiff's properties. Also by agreement the court viewed the premises.

Counsel for both sides recognize that the case of *State, ex rel. Schiederer, v. Preston* (1960), 170 Ohio St. 542, lays down some of the legal principles at issue in this case. We concur and indeed are of the opinion that the holding in *Schiederer* disposes of plaintiff's entire case except for the allegations of interference with plaintiff's means of access to and egress from its properties. Although strictly speaking all *Schiederer* held was that there was no taking of property merely because the raising of the grade of a part of a street in front of plaintiff's property interfered with plaintiff's view, the logic and the language of the opinion is much broader. In its first paragraph of the syllabus the court said:

"The two primary purposes for the existence of a street or highway are (1) to provide a means of passage for the public and (2) to provide a means of access to and egress from abutting lands; and any other rights which owners of such abutting lands may have with respect to benefits resulting from existence of a street or highway are held subject to the public right to make improvements for accomplishment of those two primary purposes."

Plaintiff, however, strenuously contends that the construction of the elevated walkway here in issue is not a use by the city for these two primary purposes designated by the Supreme Court. It argues that the walkway is not a part of Third Street but goes over Third Street; that the sidewalk on the north side of Third Street has not been changed laterally or vertically; and, that the walkway is not for the public generally but solely for patrons of the Stadium. The walkway, plaintiff contends, is like an overhead bridge between two parts of a department store located on opposite sides of a street, or like a railroad overpass, and therefore the principles enunciated in *Carlin Co.* v. *Halle Brothers,* 23 Ohio App. 115, and *Occo Realty Co.* v. *New York, Chicago & St. Louis Ry. Co.* (1929), 33 Ohio App. 414, should govern.

The facts, however, as shown in exhibit 3 and verified by the court's view of the premises do not support plaintiff's position. The walkway is at all times open to the public and carries pedestrians from, along and over the sidewalk on the north side of Third Street over Third Street and the Fort Washington Way to a large plaza overlooking the river which surrounds the stadium. This plaza abuts the south side of Fort Washington Way which in turn abuts the south side of Third Street so that one walking from the plaza to the stairs in front of plaintiff's properties would be in fact walking at all times within the confines of the public streets. The net effect is to carry pedestrians on an elevated walkway from the ground level sidewalk on one side of a super-wide street to a public plaza on the other side, and the situation therefore differs not one whit from any other pedestrian bridge which car-

ries pedestrians over the top of vehicular traffic. Certainly a pedestrian is no less a pedestrian when he walks within the confines of a public right of way whether he is above, below or beside other pedestrians or vehicles in the way.

Even, however, if the pedestrian bridge had ended at the ticket gate of the stadium instead of emptying onto the public plaza surrounding the stadium, it would still be serving one of the primary purposes of a street under the *Schiederer* rule, since it would be providing a means of access to abutting land. In other words, we are of the opinion that the construction of an elevated walkway within the confines of the street originating on the sidewalk on one side of the street and terminating at an upper floor of property abutting on the opposite side of the street would be a use by the city of the street for street purposes. It would be providing a means of access to abutting lands just as it does when it builds a sidewalk in front of an abutting owner's ground level door.

In *Ziegler* v. *Ohio Water Service Co.* (1969), 18 Ohio St. 2d 101, the Supreme Court overruled an historic line of cases to hold that the construction of a water main in a rural road was not an additional burden upon the fee of the abutting owner entitling him to compensation. It said:

"The complexities of modern life have produced uses of highways which would have been unheard of at the time many easements for public highways were granted."

"A denial of the use of a highway for the purpose of transporting water to areas where it is needed, as in the instant case, would be the rejection of evolutionary change."

Certainly this logic is even more pertinent to the construction of elevated walkways in public streets.

Having determined the defendant city is using the street for primary street purposes, the damages alleged in plaintiff's amended petition must, under the *Schiederer* rule, be considered *damnum absque injuria,* with the exception of those damages allegedly due to interference with its access. With these we will now deal.

Plaintiff, in its amended petition, asserts that "the

means of ingress and egress of its property and buildings have been and will continue to be hindered." Counsel agreed that the word "hindered" should be considered by the court as synonymous with "interfered with."

The law of Ohio has always been that an abutting owner's right of access to the street is a property right which cannot be taken from him for public use without compensation. As stated long ago in *Branahan* v. *Hotel Co.* (1883), 39 Ohio St. 333:

"The owner of lots abutting upon a public street in a city or village has a peculiar interest in the street, distinct from the right of the public to use the street. It is a private property right in the nature of an incorporeal hereditament attached to his contiguous grounds and the erections thereon * * *. The right of access to the street for business purposes is of great value * * *. This easement appendent to the abutting property is a valuable property right of which the owner cannot be divested except when taken for public use and after due compensation."

The question is how extensive is that right. Does every hinderance or interference with it constitute a compensable taking. We think it does not. In our judgment the law is correctly stated in the first paragraph of the syllabus in *In re Appropriation: Preston* v. *Weiler* (1962), 118 Ohio App. 305:

"To be a 'taking' pro tanto of an access easement so as to entitle the owner thereof to compensation, there must be a *substantial, material or unreasonable* interference with the physical access to or from the property." (Emphasis ours.)

That such is the test is born out by the decisions of the Supreme Court. In *Crawford* v. *Delaware* (1857), 7 Ohio St. 460, the court speaks of "a substantial injury" done by a change in grade; in *Hall* v. *Pittsburg* (1911), 85 Ohio St. 148, the court emphasizes the property owner's right to "reasonable" access which will be "seriously" interfered with and "materially" impaired; in *State, ex rel. Merritt*, v. *Linzell* (1955), 163 Ohio St. 97, the language is that the right of access "may not be taken away or de-

stroyed or substantially impaired without compensation."

Justice Taft pointed out in *Schiederer* that plaintiff did not allege that her right of access to or from her property had been "unreasonably" affected, and states the Ohio rule as requiring compensation when there has been a "substantial" interference with the right of access.

Furthermore, in determining whether there has been a substantial, material, or unreasonable interference with access the courts have considered the issue not in the abstract or in relation to what might be developed in the future on the land, but in relation to the improvements then on the property. As the court said in *Akins* v. *Commissioners* (1929), 31 Ohio App. 129:

"We have re-examined a great many of the reported Ohio cases on the subject and are unanimously of the opinion that in this state a property owner cannot recover damages from a political subdivision * * * for changing * * * the established grade of a street in front of privately owned property, unless that property had been improved with reference to said established grade and the grade has been changed to the damage of said improved property."

In the *Weiler case* the gist of the discussion in the Court of Appeals' opinion concerned the use for loading and unloading of the property owner's existing elevator. The dissent was bottomed on the conclusion that the improvement was a definite interference with the "established" method of ingress and egress. Similarly Justice Taft, in *Schiederer*, says:

"Thus, this court has held that, where an owner of land abutting on a highway has made improvements thereon with reference to an established grade for that highway, a substantial interference with his right of access *to those improvements* from that highway by a subsequent change of grade of the highway is a taking of property for which compensation must be provided." (Emphasis ours.)

Finally, paragraph one of the syllabus in the *Weiler case* declared:

"and in determining whether there is a substantial,

material, or unreasonable interference with such access, the proper test is whether such an interference exists as to the right considering all its particulars.''

The Court of Appeals italicized the words ''considering all its particulars.''

A perusal of the many other cases dealing with interference with the right to access indicates that although this principle had not been so clearly verbalized before it had, in fact, been applied in each case.

Summing up then, the issue before the court here is does the construction of the pedestrian walkway and bridge by the city in accordance with the plans and specifications shown on the exhibits constitute a substantial, material, or unreasonable interference with plaintiff property owner's right of access to the improvements on its properties considering all its particulars.

Looking first at the Walnut-Third Garage we **find** that on the Walnut Street side plaintiff's improvement has two small stores with regular door entrances and two double car-width garage entrances. On Berning Alley plaintiff's improvement has one double width garage entrance at ground level and two bridges crossing the alley at the third floor level to the Main-Third Garage. None of these means of ingress and egress will be in any way interfered with. On the Third Street frontage there is a store with a standard door and then a double car-width automobile entrance, then another store with a standard door, all located to the west of the pedestrian stairs and walkway and therefore not visible on Exhibit 4. The only other present entrance on the Third Street shows on Exhibit 4 and is a wide garage door. As is apparent from the exhibit neither the stairways, the pillars supporting the walkway nor the walkway itself interferes either vertically or horizontally with ingress to and egress from the property as presently improved, by pedestrians or vehicles. Our conclusion therefore is that, considered most favorably to plaintiff property owner, there is no substantial, material or unreasonable interference with its right of access to its property.

The Main-Third Garage has two double automobile entrances on Main Street and one single automobile entrance on Berning Alley as well as the two automobile bridges from the third floor of the Walnut-Third Garage. None of these is interfered with in any way. On its Third Street frontage it has three double automobile entrances and one pedestrian entrance. It is apparent from Exhibit 4 that ingress and egress to and from any of these exits is in no way hindered by the construction of the walkway. Accordingly we reach the same conclusion as to the Main-Third Garage.

In its petition plaintiff alleges "that its buildings will depreciate earlier than normal; that its cost to maintain its buildings has been and will continue to be increased; that its ability to maintain its buildings has been and will continue to be impaired." These allegations could be interpreted to mean that plaintiff's access to its buildings above ground level has been, in some way, unreasonably interfered with. This simply is not the fact. Indeed the designers of the walkway have been very successful in designing a walkway which would permit plaintiff reasonable access to every part of the wall of its buildings. Although this access may in some slight degree be more complicated than it was before the construction of the pedestrian way it is far from an unreasonable or substantial interference.

Counsel for plaintiff has correctly pointed out that the case of *In re Appropriation: Preston* v. *Weiler* (1962), 118 Ohio App. 305, was reversed by the Supreme Court of Ohio (1963) in 175 Ohio St. 107. It is very important to analyze the rationale of the decision. As we read the opinion, it says in substance that an appropriation proceeding presumes the fact that there has been a "taking." The only issue in such a proceeding is a determination of the amount of compensation to which the landowner is entitled. The issue before us is has there been a "taking." The history of the *Weiler case* as recounted in the Supreme Court's opinion was that the Director of Highways had initially refused to bring an appropriation proceeding. The property

owner had thereupon brought a mandamus action to force the director to appropriate. In his decision in the mandamus action Justice Leach predicated his issuance of the writ of mandamus on his conclusion that "relators' private right or easement for the purpose of ingress and egress to and from its property, has been and will be 'substantially impaired'." The issue at bar is the issue faced by Justice Leach in the mandamus action not the issue faced by the Court of Appeals in the appropriation case. The decision of the Supreme Court of Ohio then in no way challenged any of the principles pronounced in *Weiler* on which we here rely.

Counsel for plaintiff has also cited the very comprehensive decision of Judge Ammer in *State, ex rel. Barman, v. Lukens* (1964), 5 Ohio Misc. 1. That case involved a change in grade in the street to eliminate a railroad grade crossing. We believe it could be argued such a situation differs from the one before us. Here the city is using the street for primary street purposes as defined in *Schiederer*. In any event we do not believe that the principle there enunciated that the property owner is "entitled to a judicial inquiry before a jury as to whether the elimination of access has resulted in damages" applies to this case. We do not believe plaintiff is entitled to an inquiry before a jury unless this court can conclude that there has been a "taking" and there has not been a "taking" until the court determines that there has been a substantial, material, or unreasonable interference with the property owner's right of access considering all its particulars.

In interpreting the Supreme Court's reversal of the Court of Appeals in the *Weiler case,* Judge Ammer concluded that the Supreme Court was saying that "whether or not there had been a taking is a question of fact and not a determination of a matter of law." With this we must respectfully disagree. The extent of the taking is, of course, a question of fact but whether or not there has been a taking, under the test hereinbefore outlined, we think is clearly a question of law. The situation is roughly comparable to that faced by a judge when confronted

with a demurrer to a petition alleging injuries to a guest in an automobile. To state a cause of action a plaintiff is required to allege facts from which a trier of facts could find that the driver had been guilty of willful and wanton negligence. Facts showing negligence alone would be insufficient. Similarly, here facts showing interference alone are insufficient. There must be facts showing substantial material or unreasonable interference and this determination is a question of law for the court.

For the reasons hereinbefore set out we have concluded that plaintiff has not stated a cause of action for damages or a basis for the issuance of a writ of mandamus ordering the city to commence appropriation proceedings. The demurrer must be sustained and relator-plaintiff's amended petition dismissed.

*Demurrer sustained.*