BRAMSON v. CITY OF BEREA.

(No. 859038—Decided March 16, 1971.)

Common Pleas Court of Cuyahoga County.

*Messrs. Rini & Hecht, Mr. Martin Rini* and *Mr. Donald L. Goldman,* for plaintiff.

*Messrs. Kelley & McCann* and *Mr. Walter C. Kelley,* for defendant.

WHITING, J.  This action was brought by Albert H. Bramson to compel the removal of a small roadside plaza recently constructed by the city of Berea on the dedicated portion of plaintiff's vacant property in furtherance of a general plan to beautify the city.

In 1927, the frontage on Rocky River Drive in the city of Berea was dedicated "to public use for street purposes." Since 1952, Bramson has been the owner in fee of a vacant corner lot on Rocky River Drive and River Edge Parkway in that city.

In 1967, the City Council of Berea duly adopted a plan for beautification of the city.  One phase of this plan, designated as the North Entrance Improvement Program, was to upgrade and improve the deteriorated area in the vicinity of plaintiff's property by an expenditure of some $116,000 in public funds.  In 1968, in furtherance of this program, the city buried electric and telephone lines, removed dead trees and old signs, replaced sidewalks, smoothed out the traffic flow and generally improved and beautified the area. The city also constructed a small plaza—called an "information stop"—on the dedicated portion of plaintiff's property.  This plaza consisted of a paved sidewalk area approximately 28 by 69 feet occupied by two benches, three signs displaying information regarding various civic organizations, a city map and a message of welcome together, a public telephone booth, appropriate area lighting and a 2-½ foot wall located behind the paved area and extending an additional 120 feet along but inside the dedication line of plaintiff's lot.  All construction is within the dedicated portion of plaintiff's property.

Plaintiff seeks an injunction requiring defendant to remove the plaza on the several grounds that (1) it was erected as part of a plan to beautify the city of Berea and not for a street purpose, and therefore is not within the

terms of the dedication; (2) it infringes upon plaintiff's right of access to his property; (3) it infringes upon plaintiff's right that the property and anything he may build thereon be subject to the view of passersby; and (4) along with the other improvements it constitutes a traffic hazard and as such is a public nuisance.

A new public use that is not within the terms of a dedication creates an additional burden upon the servient estate. The imposition of this additional burden constitutes a taking of private property for public use within the meaning of Article 1, Section 19 of the Ohio Constitution entitling the property owner to compensation. *Railway Co.* v. *Gardner* (1887), 45 Ohio St. 309; *Rothwell* v. *Linzell* (1955), 163 Ohio St. 517; *Ziegler* v. *Ohio Water Svc. Co.* (1969), 18 Ohio St. 2d 101. Under proper circumstances, a court will restrain such public use in the absence of compensation. *Cincinnati & Spring Grove Ave. St. Ry. Co.* v. *Cumminsville* (1863), 14 Ohio St. 523.

The portion of plaintiff's property here involved was dedicated to the public use "for street purposes." In the absence of an exercise of the power of eminent domain, the city of Berea may use it for no other purpose. However, the city has the full right and power to use the property for all public and beneficial purposes consistent with the terms of the dedication.

The physical manner in which a street purpose was carried out at the time of dedication is not the limit of the use to which the public is now entitled. *Malone* v. *Toledo* (1876), 28 Ohio St. 643; *Ziegler* v. *Ohio Water Svc. Co.*, *supra*. The permitted use includes all improved methods of obtaining the same objects and enjoying the same privileges. *Smith* v. *Central Power Co.* (1921), 103 Ohio St. 681, 11 McQuillan, Municipal Corporations (3 Ed.), Section 33.74. As said in *Ziegler* v. *Ohio Water Svc. Co.*, *supra*, at page 106, "the complexities of modern life have produced uses of highways which would have been unheard of at the time many easements for public highways were granted." To constitute an added burden the new use must be inconsistent with the purpose of the dedication, or must

substantially interfere with it. *Cincinnati & Spring Grove Ave. St. Ry. Co.* v. *Cumminsville, supra*; *State, ex rel. Crabbe,* v. *Sandusky M. & N. Rd. Co.* (1924), 111 Ohio St. 512; *Anthony Carlin Co.* v. *Halle Bros. Co.* (1926), 23 Ohio App. 115; *Summit County Historical Society* v. *Akron* (1961), 115 Ohio App. 555; 11 McQuillan, Municipal Corporations (3 Ed.), Section 33.74.

Plaintiff contends that the facilities erected on his property were placed there for esthetic purposes and not for street purposes and are therefore an added burden upon his estate. It is true that the plaza and its appurtenances are architecturally attractive and were installed as part of an overall plan motivated by a desire of the city administration to beautify the area. However, esthetics and function are not mutually exclusive. If the function of a physical structure is within the lawful scope of the public purpose to which the underlying land is dedicated, it is no objection that esthetic considerations motivated the city administration to erect the structure, or that for esthetic reasons the administration abandoned practices of long standing and came up with a unique, attractive and contemporary design.

It goes without saying that the term "street purposes" includes use by vehicular and pedestrian traffic as a prime object. *State, ex rel. Schiederer,* v. *Preston* (1960), 170 Ohio St. 542. Clearly related to this use are signs advising passersby of the location of other city streets and of the presence of various civic organizations within the city. The same is true as to the benches, the telephone booth and the lighting thereof provided by an overhead cluster fixture. That passing motorists and pedestrians might survive without these facilities is not the test. It is enough that the facilities are a source of some utility, interest, comfort and pleasure to passersby in relation to their use of the public way.

Plaintiff takes particular exception to the wall, 2-½ feet high, which the city has erected partially around the plaza and which extends some 120 feet beyond the plaza and along but immediately inside the dedication line. Taken

by itself, this wall appears to have no significant function relative to street use. However, it was designed and constructed, for esthetic reasons, as an integral part of the plaza to improve its appearance and to relate it to other civic improvements at the same intersection, which are not on plaintiff's property but which serve a similar street purpose. A structure need not be ugly to be functional and a functional design need not stop short of beauty to be acceptable. If the design and construction of a facility which otherwise qualifies as being for a street purpose is embellished or extended for esthetic purposes, there is no legal reason why the embellishment or extension—even though physically severable—should be eliminated simply because within itself it has no functional street purpose.

The mere fact that the construction of the plaza was motivated by a desire to beautify the city of Berea thus furnishes plaintiff no basis for injunctive relief. The use of the plaza is a "street purpose" as that term has been defined by the courts. There is another ground, however, upon which plaintiff has a valid claim. The plaintiff is entitled to relief by reason of interference by the plaza with his right of access.

Esthetic considerations aside, it is evident that the wall has severely restricted ingress to and egress from plaintiff's property on Rocky River Drive. Rocky River Drive being a principal thoroughfare, and plaintiff's property being zoned for business use, this restriction may prove to be detrimental.

An act of dedication for street purposes not only creates rights of use in the public but also reserves certain private rights to the grantor. *Smith* v. *Central Power Co.*, *supra* (103 Ohio St. 681). These private rights are in the nature of incorporeal hereditaments and long have been recognized as easements appurtenant to the abutting land. *Crawford* v. *Delaware* (1857), 7 Ohio St. 459. Principal among these easements is the land owner's right of access. *State, ex rel. Schiederer,* v. *Preston, supra.* Other such easements heretofore recognized by Ohio courts include the right to light, air, view and lateral support.

It is well established that an otherwise proper public use that materially injures an abutting owner's right of ingress and egress constitutes an unlawful taking of property—*i. e.*, of the easement or a portion thereof—in absence of an exercise of the power of eminent domain. *Smith* v. *Central Power Co., supra*; *State, ex rel. McKay,* v. *Kauer* (1951), 156 Ohio St. 347. The question is, what constitutes a material injury to the easement?

Counsel for plaintiff urges that any "substantial or material or unreasonable interference with the physical access to or from the property" is a material injury to the easement. This confuses physical access with an easement for physical access. Every substantial and/or material obstruction to physical access does not constitute a material injury to the right of access. It is only the substantial and/or material interference with the easement that injures the abutting owner and the easement extends only so far as the owner's reasonable and convenient enjoyment of the property requires (*Smith* v. *Commissioners* (1893), 50 Ohio St. 628; 64 C. J. S. 99, Municipal Corporations, Section 1703; 39 Am. Jur. 2d 552, Highways, Streets and Bridges, Section 178), and does not necessarily extend to preserve physical access over each and every front foot. (39 Am. Jur. 2d, *supra.*) When considered in full, the opinion of the Franklin County Court of Appeals in *Preston* v. *Weiler* (1962), 118 Ohio App. 305, reversed 175 Ohio St. 107, on other grounds, seems to be in accord with this view, as does the opinion of Judge Bettman in *State, ex rel. Cincinnati Garage Co.,* v. *Bird* (1970), 25 Ohio Misc. 69. Examination of the various opinions of the Supreme Court touching on the subject shows no conflict. This court therefore holds that a material injury of this nature occurs only when there has been a substantial and material interference with the owner's reasonable and convenient enjoyment of the property. Anything less is *damnum absque injuria.*

Each case must be decided on its own facts, taking into consideration all the circumstances, *In re Preston* v. *Weiler, supra*; *State, ex rel. Cincinnati Garage Co.,* v. *Bird, supra.*

And in each case the burden is upon the plaintiff to prove the interference. *Franko* v. *Ohio Edison Co.* (1954), 71 Ohio Law Abs. 221; *Preston* v. *Weiler, supra.*

Plaintiff's evidence as to what the best potential use of this now vacant property requires by way of physical access on Rocky River Drive is that he can reasonably get by with a driveway 50 feet wide and that at least 30 feet or more should be devoted to such purpose. Taking all the evidence into consideration, it appears to the court that if the terminus of the plaza wall is established at a point 60 feet from the northerly boundary of plaintiff's property the available access on Rocky River Drive will be sufficient for the reasonable and convenient enjoyment of the property. This can be accomplished by removing 40 linear feet of the wall.

The opinion of the Supreme Court in *State, ex rel. Schiederer,* v. *Preston, supra,* seems to indicate that interference with such "incidental" easements as the right to light, air and view may not be a taking of property within the meaning of the Ohio Constitution. At least one appellate court and one Court of Common Pleas have so interpreted that opinion. *Preston* v. *Weiler, supra; State, ex rel. Cincinnati Garage Co.,* v. *Bird, supra.* Nevertheless it may be that the decision in *Schiederer* v. *Preston* can be reconciled with a more acceptable view that easements for light, air, and view, being narrow in scope, are seldom infringed upon by the public use but that when infringement occurs an added burden is created, which constitutes a taking of property for which there must be compensation. In the earlier case of *Smith* v. *Central Power Co., supra,* at page 690, in a concurring opinion, Chief Justice Marshall stated that an abutting owner's rights to light, air and view "are also property rights which may not be interfered with or appropriated to the public use without compensation." Since then (1922), and since the decision in *Schiederer* v. *Preston* (1960), there has been an increasing realization of the importance of these particular rights to our way of life.

This court therefore takes the position that a material injury to the easement of view is a taking of property, and

further that the right of view includes the right to be seen as well as the right to see. *Kelbro, Inc.,* v. *Myrick* (1943), 113 Vt. 64, 30 A. 2d 527; *Murphy, Inc.,* v. *Westport* (1944), 131 Conn. 292, 40 A. 2d 177; 64 C. J. S., 68, Municipal Corporations, Section 1702.

With respect to plaintiff's right to be viewed by pass--ersby—admittedly a valuable right in a commercial situation—there is no evidence of an obstruction of the physical view to a point where the court could find a substantial and material interference with the owner's reasonable and convenient enjoyment of the property. As a matter of fact, if the total evidence relevant to view is considered, it appears that the city's North Entrance Improvement Program had a net effect of improving the view of passersby on and over plaintiff's property as well as their opportunity for view and their opportunity to make a decision to enter the property.

Plaintiff's claim that the civic improvements in the area, including the plaza, create a traffic hazard of such character as to establish a cause of action in his favor, as a property owner, are not sustained by the evidence.

Defendant is ordered to remove the northerly forty (40) linear feet of the plaza wall referred to above within ninety (90) days from the date judgment is herein entered. Should defendant initiate an action to appropriate a portion of plaintiff's easement of access sufficient to provide for the aforesaid forty (40) linear feet of wall, the court will entertain a motion to suspend this order pending final disposition of said action.

Costs herein are assessed against the defendant.

*Judgment accordingly.*