CITY OF FARGO, North Dakota, a municipal corporation, Petitioner, Respondent and Cross-Appellant,

v.

Frank R. FAHRLANDER, Appellant and Cross-Respondent.

Civ. No. 8809.

Supreme Court of North Dakota.

June 16, 1972.

**32**

———◆———

Conmy, Feste, DeMars & Bossart, Fargo, for appellant.

Solberg & Stewart, Fargo, for petitioner and respondent.

PAULSON, Judge.

The City of Fargo brought this mandamus action to compel the respondent, Frank R. Fahrlander, to perform his duties as City Auditor and Director of Finance for the City of Fargo. Acting pursuant to advice of legal counsel, Mr. Fahrlander has refused to take the action necessary for the City to proceed with the "Broadway Mall" project in downtown Fargo.

The "Broadway Mall" is a project which would eliminate normal vehicular traffic for several blocks on Broadway, the main thoroughfare in downtown Fargo, and reserve the street for pedestrian usage. The present plans call for the "Broadway Mall" project to cover three blocks, with future plans to include two additional blocks. The structure is to be a two-story enclosed pedestrian mall which would be climatized and illuminated for maximum shopper comfort and convenience. The superstructure of the mall would be physically connected to the existing adjacent buildings on both sides of Broadway to allow passage between the various businesses without exposure to the elements. The mall would include walkways on the second-story level so that provisions could be made to enter the existing businesses either at the street level or at the second-story level.

At the intersections with N. P. Avenue and First Avenue North—the two streets which cross Broadway within the proposed mall area—the pedestrian mall would be elevated so that normal vehicular cross-traffic on those streets would not be adversely affected.

Within the mall there would be a display area, a sales area, an exhibit area, a sitting area, a children's play area, a restaurant, a theater, information booths, restrooms, plants, and various other facilities designed to furnish comfort, convenience, and a pleasant environment to shoppers and visitors. There would also be retail space provided for leasing to private businesses.

The mall design would allow for the use of Broadway by emergency vehicles and would also provide the adjacent property owners with vehicular access to the front of their property, although not necessarily during normal business hours.

The design concept for the "Broadway Mall" project was prepared by volunteer members of the Fargo-Moorhead Architects Group, with the City of Fargo providing for the incidental expenses.

The legal authorization for construction of projects such as the "Broadway Mall" was provided by the 1967 Legislature with the enactment of Chapter 40–62 of the North Dakota Century Code. Subsequent to 1967 the City of Fargo adopted a home rule charter in conformance with Chapter 40–05.1 of the North Dakota Century Code. Pursuant to its home rule charter, the Fargo Board of City Commissioners enacted City Ordinance No. 1395, which ordinance incorporates all sections of Chapter 40–62, N.D.C.C., with the exception of §§ 40–62–03 and 40–62–05, N.D.C.C. These two sections set forth generally the type of facilities which may be provided and the vehicular traffic regulations which may be imposed. In lieu of §§ 40–62–03 and 40–62–05, N.D.C.C., Fargo City Ordinance No. 1395 provides specifically for the facilities and traffic regulations envi-

sioned by the "Broadway Mall" design concept. Since Fargo is a home rule city, its Ordinance No. 1395 is paramount to Chapter 40–62, N.D.C.C., for the purposes of this lawsuit. § 40–05.1–05, N.D.C.C.

Fargo City Ordinance No. 1395 provides that upon a determination of necessity by the Board of City Commissioners a special improvement district is to be created to provide for the construction of the "Broadway Mall" project as envisioned by the F–M Architects Group. The Board of City Commissioners duly made a determination of necessity and created Special Improvement District No. 3329, Broadway Mall Project, encompassing essentially one-half block on either side of Broadway for the three blocks within the project. The necessary publication was made and opportunity for protest was given to the affected property owners. The Board of City Commissioners duly determined the protests to the project to be insufficient, and the only impediment to further action on this project is Mr. Fahrlander's refusal to perform those duties of his office which are necessary for the City to proceed.

Fahrlander has appealed from the judgment of the district court of Cass County that the writ of mandamus prayed for should be issued. The City of Fargo has cross-appealed from that part of the trial court's decision which requires the City to initiate eminent domain proceedings to compensate for the impairment of the owners' rights as holders of the fee title to the street; to compensate the adjacent property owners for impairment of access, light, air, and view; and to compensate for the physical damage to the adjacent buildings caused by their attachment to the mall structure.

■ The first issue which must be considered on this appeal is the constitutional question of whether Chapter 40–62, N.D. C.C., and Fargo City Ordinance No. 1395 violate the provisions of Section 14, Article I, of the North Dakota Constitution which prohibit the taking or damaging of private property without just compensation. Since neither Chapter 40–62, N.D.C.C., nor Fargo City Ordinance No. 1395 specifically provide the City with the right of eminent domain in the construction of a pedestrian mall, Fahrlander contends that such right of eminent domain does not exist and, therefore, Chapter 40–62, N.D.C.C., and the ordinance are unconstitutional. To prevail on this contention, Fahrlander must overcome the well established presumption that every statute enacted by the Legislature is constitutional. Hector v. Board of Township Supervisors of Stanley Township, 177 N.W.2d 547 (N.D.1970); Boeing Company v. Omdahl, 169 N.W.2d 696 (N. D.1969); Souris River Telephone Mutual Aid Corp. v. State, 162 N.W.2d 685 (N.D. 1968).

The district court found that Chapter 40–62, N.D.C.C., adopts by reference § 40–22–05, N.D.C.C., which authorizes condemnation of private property for special improvement projects, and accordingly held that Chapter 40–62 provides for eminent domain by a city for purposes of constructing a pedestrian mall. The district court also noted that the Fargo City Home Rule Charter grants the City the power:

"*Article 3—Powers of City*

. . . . . .

"a. To acquire, hold, operate, and dispose of property within or without the corporate limits, and exercise the right of eminent domain for such purposes.

. . . . . ."

For these reasons the district court found that Chapter 40–62, N.D.C.C., and Fargo City Ordinance No. 1395 authorized the exercise of eminent domain for pedestrian mall purposes, and held the chapter and the ordinance to be constitutional.

■ We agree with the district court that Chapter 40–62, N.D.C.C., and Fargo City Ordinance No. 1395 do not contravene Section 14, Article I, of the North Dakota Constitution. Our examination of the ap-

plicable law satisfies this court that the district court was correct in its determination that Chapter 40–62, N.D.C.C., adopts by reference § 40–22–05, N.D.C.C., and that the Fargo City Home Rule Charter grants the City the power to exercise eminent domain to take the property necessary for construction of the mall project. Therefore, Fahrlander's contention that the right of eminent domain does not exist is without merit.

■ We also agree with the district court that eminent domain proceedings are necessary in the case at bar. Section 14, Article I, of the North Dakota Constitution provides:

"Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner. . . ."

In Cummings v. City of Minot, 67 N.D. 214, 271 N.W. 421 (1937), this Court held, at paragraph 2 of the syllabus:

"An abutting property owner is entitled to recover for injuries arising from interference with his easements of light, air, and access when such interference is caused by the lawful improvement of the street in a manner which could not have been reasonably anticipated at the time of dedication, and for which damages have not been waived."

We find that the construction of a pedestrian mall could not have been reasonably anticipated at the time Broadway was dedicated as a street and that damages have not been waived. This Court will take judicial notice of the fact that it is only in recent years that pedestrian malls have emerged on the scene. This fact is pointed out by the dearth of case law on the subject. We therefore conclude that eminent domain proceedings are necessary to compensate the abutting property owners for the taking of light, air, access, and view.

■ The City must also initiate eminent domain proceedings to compensate the abutting property owners in accordance with subsection 2 of § 32–15–03, N.D.C.C. Section 47–01–16, N.D.C.C., provides that abutting property owners are presumed to hold the fee ownership in the street. This Court has previously held that usage of a street which constitutes a new servitude inconsistent with the use of a street for travel requires just compensation to the fee owners. Gram Const. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co., 36 N.D. 164, 161 N.W. 732 (1917); Tri-State Telephone & Telegraph Co. v. Cosgriff, 19 N.D. 771, 124 N.W. 75, 26 L.R.A., N.S., 1171 (1909); Cosgriff v. Tri-State Telephone & Telegraph Co., 15 N.D. 210, 107 N.W. 525 (1906); Donovan v. Allert, 11 N.D. 289, 91 N.W. 441 (1902). See also 2A Nichols, Eminent Domain § 6.4444 (Rev.3d Ed.); and 3 Nichols, Eminent Domain § 9.21 (Rev.3d Ed.). These cases concerned the installation of telephone poles and railroad tracks in the street. We conclude that while the "Broadway Mall" project will be used for pedestrian traffic which is consistent with travel, it will also be used for many purposes which are inconsistent with travel, i. e., a display area, sales area, exhibit area, restaurant, theater, and retail spaces. Because of these uses of Broadway inconsistent with usage for travel, we hold that the abutting property owners are entitled to have the City initiate eminent domain proceedings for the purpose of ascertaining and determining damages for injuries to their property rights in the street.

■ On the basis of Section 14, Article I, of the North Dakota Constitution, we also find that the abutting property owners are entitled to have the City initiate eminent domain proceedings to ascertain the damages caused by the attaching of the mall structure to their buildings.

Having concluded our discussion concerning the constitutional issue and having determined that Chapter 40–62, N.D.C.C., and Fargo City Ordinance No. 1395 do not contravene Section 14, Article I, of the North Dakota Constitution, and that eminent domain proceedings are required, we

will next turn to consideration of the other issues raised by Fahrlander.

 Fahrlander contends that even if Chapter 40–62, N.D.C.C., does not contravene the provisions of Section 14, Article I, of the North Dakota Constitution, the design concept of the "Broadway Mall" project does not come within the statutory provisions. His specific argument is that Chapter 40–62 does not provide for total exclusion of normal vehicular traffic from the street nor for the leasing of retail space within the mall to private business enterprises. Fahrlander's argument ignores the fact that Fargo is a home rule city and, as such, its ordinances supersede contradicting state legislation. See § 40–05.1–05, N.D.C.C. Fargo City Ordinance No. 1395 specifically provides for the "Broadway Mall" concept as envisioned by the F–M Architects Group and therefore this contention by Fahrlander is without merit.

 Fahrlander also contends that it was error for the Fargo Board of City Commissioners to determine that the protests to the improvement project were insufficient. He urges that the protests of three holders of leasehold interests should have been counted against the project, thus causing the failure of the project. We disagree. In order to defeat a proposal for a special improvement district, § 40–22–18, N.D.C.C., requires that protests be made by the owners of a majority of the property within such district, and we do not consider holders of leasehold interests to be owners, notwithstanding the fact that they indirectly pay the cost of special assessments. This topic is annotated at 2 A.L.R. 778, 95 A.L.R. 1085, and 48 Am.Jur., Special or Local Improvements § 160, and none of these authorities support Fahrlander's contention.

 Fahrlander contends that the general public has a vested right to use Broadway for vehicular travel and that the "Broadway Mall" project would deprive them of this right. He cites no constitutional provision nor court decisions granting such right and we are of the opinion that the Fargo Board of City Commissioners was acting within its power in determining that Broadway would best serve the public by being used for pedestrian travel only. The City has made provisions for alternate routes for vehicular traffic and we are satisfied that these provisions are reasonable.

 Fahrlander also contends that the "Broadway Mall" project places a contingent tax liability upon the citizens of Fargo which should not be imposed without the approval of the voters. Fahrlander seeks to distinguish a pedestrian mall project from other special improvement projects because of the magnitude of the mall project. In a normal special improvement project the full faith and credit of the municipality stands behind the project without voter approval. We agree with Fahrlander that a pedestrian mall is an undertaking of considerable magnitude but we believe it is not so different from other projects as to cause this court to substitute its judgment for that of the State Legislature and the Fargo Board of City Commissioners.

 Lastly, Fahrlander contends that construction of a pedestrian mall which contains retail space for lease and which is financed by a special levy against properties which are supposedly benefited by a special improvement project is unreasonable and is not authorized either by Chapter 40–62, N.D.C.C., or Section 185, Article XII, of the North Dakota Constitution. In considering the reasonableness of such a project, the district court relied on the language of this court in Ferch v. Housing Authority of Cass County, 79 N. D. 764, 59 N.W.2d 849, 861 (1953), which states:

"It has been held that governmental competition with owners of private business does not constitute legal damage even though it may injure their business.

Neither the federal nor state Constitution grants any right to plaintiff to be free from competition."

We adhere to this reasoning and find it germane to this case.

■ The contention that leasing of retail space is not provided for in Chapter 40–62, N.D.C.C., is without merit since Fargo City Ordinance No. 1395 specifically provides for leasing of retail space, and in view of Fargo's status as a home rule city its ordinance supersedes contradicting state legislation. § 40–05.1–05, N.D.C.C.

Section 185, Article XII, of the North Dakota Constitution provides:

"The state, any county or city may make internal improvements and may engage in any industry, enterprise or business, not prohibited by article XX of the constitution, but neither the state nor any political subdivision thereof shall otherwise loan or give its credit or make donations to or in aid of any individual, association or corporation except for reasonable support of the poor, nor subscribe to or become the owner of capital stock in any association or corporation."

In considering Fahrlander's contention that leasing retail space is not authorized by Section 185, the district court quoted from Gripentrog v. City of Wahpeton, 126 N. W.2d 230, 237–238 (N.D.1964), as follows:

"Section 185 does not prohibit the making of loans or giving of credit or making donations in connection with a city's engaging in any industry, enterprise, or business . . . . What it does prohibit is for a city 'otherwise' to make loans or give its credit or make donations. In other words, making loans or giving credit may be done in connection with the city's engaging in any permissible industry, enterprise, or business, but not otherwise."

■ We agree with the district court that the leasing of city-owned property is a permissible municipal function, in view of our decision in *Gripentrog, supra.* We recognize that *Gripentrog* involved general revenue bonds, whereas the case at bar involves a special assessment. However, in view of the fact that Section 185 authorizes a city to engage in enterprise or business and makes no mention of financing, we do not find the method of financing such enterprise or business to be controlling.

The judgment of the district court is affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.