**John E. CASTOR, et al.,
Petitioners, Appellants,**

v.

**CITY OF MINNEAPOLIS, Respondent.**

**No. C3–87–1036.**

Court of Appeals of Minnesota.

Dec. 1, 1987.

Review Granted Feb. 12, 1988.

Bradley J. Gunn, Olson, Gunn and Seran, Ltd., Minneapolis, for petitioners, appellants.

Robert J. Alfton, City Atty., Allen B. Hyatt, Asst. City Atty., Minneapolis, for respondent.

Heard, considered and decided by FOLEY, P.J., WOZNIAK and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

Appellants John E. Castor, Austin D. Ditzler, Jerome Klukas, Richard S. Scherer, Al H. Michals and William J. Yaeger, Jr., owners of the Barrister's Trust Building, brought an inverse condemnation action against respondent City of Minneapolis, seeking compensation for the taking of their implied easements of air, light and view. Finding the skyway was a proper street use, the trial court held any resulting damages were noncompensable. We affirm.

## FACTS

The facts are not in dispute. The Barristers Trust Building is a two-story office building located at 247 Third Avenue South in Minneapolis. The northeast side of the building abuts a public alley which runs through the middle of the block from Third Avenue to Fourth Avenue. The alley is located adjacent to the entire length of the building.

Several years ago, respondent constructed a skyway above the alley to connect a municipal parking ramp and a bus layover facility with the downtown Minneapolis skyway system. The skyway, which is located alongside the Barristers Trust Building at the second-story level, is a permanent structure.

## ISSUE

Did the trial court err by determining the skyway is a proper street use?

## ANALYSIS

Upon review of an application for mandamus relief, the trial court's decision will be reversed only if there is no evidence reasonably tending to sustain its finding. *Tyo v. Ilse*, 380 N.W.2d 895, 897 (Minn.Ct. App.1986).

Landowners who own property abutting a public street possess implied easements of light, air and view over the public street. *Haeussler v. Braun*, 314 N.W.2d 4 (Minn.1981). The same right ap-

plies to landowners who own property abutting a public alley. *State ex rel. Hunt v. City of Montevideo,* 142 Minn. 157, 162, 171 N.W. 314, 316 (1919).

Recently, the supreme court considered whether sound barriers erected along Interstate 35W constituted a taking of a landowner's implied easements of air, light and view. The *Haeussler* court reiterated what it had stated long ago, emphasizing the broad scope of public easements:

If there is any one fact established in the history of society and of the law itself, it is that *the mode of exercising [the public] easement is expansive, developing and growing as civilization advances.* In the most primitive state of society the concept of a highway was merely a footpath; in a slightly more advanced state it included the idea of a way for pack animals; and, next, a way for vehicles drawn by animals * * *. * * * the methods of using public highways expanded with the growth of civilization, until to-day our urban highways are devoted to a variety of uses not known in former times, and never dreamed of by the owners of the soil when the public easement was acquired. Hence *it has become settled law that the easement is not limited to the particular methods of use in vogue when the easement was acquired,* but includes all new and improved methods, the utility and general convenience of which may afterwards be discovered and developed in aid of the general purpose and for which highways are designed. And *it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired, and are more onerous to him than those in use.*

*Id.* at 7–8 (quoting *Cater v. Northwestern Telephone Exchange Co.,* 60 Minn. 539, 543, 63 N.W. 111, 112 (1895)) (emphasis added).

■ Implied easements of air, light and view are limited by the public's right to travel on the roadway. *Haeussler,* 314 N.W.2d at 7. Landowners are only entitled to the air, light and view not obstructed by a proper street use. *Id.* at 8.

The Minnesota Supreme Court has determined what constitutes a proper street use on a case-by-case basis. *See id.* (erection of sound barriers along an interstate highway held a proper street use); *McCarthy v. City of Minneapolis,* 203 Minn. 427, 281 N.W. 759 (1938) (construction of bridge for street railway car service held a proper street use); *Cater v. Northwestern Telephone Exchange Co.,* 60 Minn. 539, 63 N.W. 111 (1895) (placing telephone poles at 170 foot intervals in rural area held a proper street use); *Willis v. City of Winona,* 59 Minn. 27, 60 N.W. 814 (1894) (construction of bridge approach which radically increased street grade held a proper street use); *Adams v. Chicago, Burlington & Northern Railway,* 39 Minn. 286, 39 N.W. 629 (1888) (commercial railroad which did not benefit the general public was held an improper street use); *Carli v. Stillwater Railway & Transfer Co.,* 28 Minn. 373, 10 N.W. 205 (1881) (construction and use of a railroad not for public use held not a proper street use). Where the use is not a proper street use, an additional servitude is placed upon the landowner's easements and a taking should be found. *Haeussler,* 314 N.W.2d at 11 (Wahl, J., dissenting).

Appellants argue the skyway is not located on the roadway and, therefore, is not a use of the street as a street but as a building. Appellants' position would limit this court's interpretation of a proper street use exclusively to public travel on a roadway. Such an interpretation is not consistent with the supreme court's decision in *Haeussler* which states "it is not material that these new and improved methods of use were not contemplated by the owner of the land when the easement was acquired." *Haeussler,* 314 N.W.2d at 8.

Appellants also contend alleys are different from streets. As support, appellants cite *Flynn v. City of Worthington,* 177 Minn. 28, 224 N.W. 254 (1929). There, the Minnesota Supreme Court stated:

Alleys differ from streets. They are not intended to convenience the public in the

way streets do. They are more of local convenience to the parts of the block which they abut. They are not thought of as a street connecting with other streets and supplying the municipality with a system of such purposes. While the public travels it, its use is local to abutting property. A street is intended for general public use and the general public have in it an interest different from that which they have in an alley.

*Id.* at 29, 224 N.W. at 254–55.

We hold *Flynn* should be confined to its particular facts, which deal with the method of assessing abutting property owners. *See also Hunt,* 142 Minn. at 162, 171 N.W. at 316 ("alley laid out and established by public authority is a public highway, regardless of the number of citizens who may find an occasion to use it"); *Carli,* 28 Minn. at 376, 10 N.W. at 206 ("It can hardly be questioned that the primary and fundamental purpose of a public highway, street *or alley* is to accommodate the public travel.") (emphasis added).

The unique fact situation presented by this case has not previously been addressed by the Minnesota courts. The City of Cincinnati has, however, confronted a similar situation. In *State ex rel. Cincinnati Garage Co. v. Bird,* 25 Ohio Misc. 69, 263 N.E.2d 330 (1970), the city constructed an elevated walkway above an existing sidewalk, within the confines of the street and within 6–12 inches of plaintiff's buildings, both which were parking garages. As in this case, the plaintiff complained he was deprived of his easements of air, light and view by the presence of the elevated walkway and commenced a mandamus action for inverse condemnation. The *Cincinnati Garage* court first noted the purpose of the skyway is to carry pedestrians.

> The net effect is to carry pedestrians on an elevated walkway from the ground level sidewalk on one side of a super-wide street to a public plaza on the other side, and the situation therefore differs not one whit from any other pedestrian bridge which carries pedestrians over the top of vehicular traffic. Certainly a pedestrian is no less a pedestrian when he

walks within the confines of a public right of way whether he is above, below or beside other pedestrians or vehicles in the way.

*Id.* 263 N.E.2d at 333. The Ohio court denied plaintiff's requested relief and stated:

> [T]he construction of an elevated walkway within the confines of the street originating on the sidewalk on one side of the street and terminating at an upper floor of property abutting on the opposite side of the street would be a use by the City of the street for street purposes. It would be providing a means of access to abutting lands just as it does when it builds a sidewalk in front of an abutting owner's ground level door.

*Id.* Here, as in *Cincinnati Garage,* the city has constructed a skyway to provide pedestrians a means of access to the public ramp, bus layover facility, and all of downtown Minneapolis, just as it does by constructing a sidewalk.

Appellants attempt to limit the effect of *Cincinnati Garage* by citing two other Ohio cases dealing with elevated walkways. In *Bramson v. Berea,* 33 Ohio Misc. 186, 293 N.E.2d 577 (1971), the city constructed a roadside plaza on the dedicated portion of plaintiff's vacant property in furtherance of the city's general plan to beautify the city. The property had been dedicated "to public use for street purposes." *Id.* at 580. The roadside plaza consisted of a paved sidewalk approximately 28 by 69 feet occupied by two benches, three signs displaying information about various civic organizations, a city map, a welcome sign, a public telephone booth, area lighting and a two and one-half foot wall. All of the construction was within the dedicated portion of plaintiff's property. Noting that "easements for light, air and view, being narrow in scope are seldom infringed upon by the public use," the *Bramson* court found the plaza was an infringement and granted plaintiff's request for relief. *Id.* at 583.

In *City of Fargo v. Fahrlander,* 199 N.W.2d 30 (N.D.1972), the city constructed a second-story pedestrian mall which included skywalks with a display area, sales

area, sitting area, children's play area, restaurant, theater, information booths, restrooms and retail space leasing to private business. *Id.* at 32. Finding the uses of the second-story mall inconsistent with pedestrian travel, the *Fahrlander* court allowed the abutting property owners to recover damages. *Id.* at 34.

 The fact situations in both *Bramson* and *Fahrlander* are clearly distinguishable from this case. In both cases the skyway was used for purposes other than pedestrian travel. In this case, however, the skyway connects a municipal parking ramp and bus layover facility to the central skyway system. It was constructed with the aid of an Urban Mass Transportation Administration grant. The skyway furthers the city's efforts at encouraging development in the Gateway District by removing busses and pedestrians from the street. For safety measures alone, it is proper. To hold otherwise would be to ignore as well as to turn backward the onward march of human progress and the need for such a facility in an ever-growing metropolitan area. We hold the trial court did not err in finding the skyway to be a proper street use.

### DECISION

Affirmed.

CRIPPEN, Judge, dissenting.

There is ample reason to conclude that proper street use now includes skyways which cross a street to join two buildings. This case poses a very different problem, the matter of a second floor skyway constructed along the right-of-way and adjoining the entire side of an adjoining building. In these circumstances, there is a taking by the public authority of respondent's easements of air, light, and view. The current march of human progress cannot go forward without just compensation for the owners of property taken for public use. Minn. Const. Art. I, § 13.

The precedent established by our decision in this case poses a serious threat to the property interests of those who own land adjoining a public right-of-way. Un-

doubtedly, the private interest may be more evident in some cases than in others. Our decision here would justify a block-long skyway at the second story level running across the entire set of second story windows on a newly constructed office building. It is evident that the owner has lost property due to an improvement which should not be classified as a proper street use.

I respectfully dissent.