## COLEMAN *against* WOLCOTT.

This was an action on the case, in several counts, the substance of which may be concisely stated as follows(a). In *September* 1795, the plantiff and *John Taylor,* on the one part, entered into a covenant with the defendant on the other part, whereby the former covenanted to advance certain sums of money, and the latter covenanted to survey, locate and procure a grant or patent of 200,000 acres of a tract of land in *Virginia* within the *Louisa* forks of the river *Sandy,* or repay the money advanced. In *November* following, *Taylor* assigned all his interest, and the plantiff two thirds of his interest in this covenant to *Eliel Gilbert,* which assignments were made with the defendant's knowledge, and were entered on the back of the covenant, or a copy thereof. The plaintiff and *Taylor* advanced the stipulated sums to the defendant, and performed all the covenants on their part, except so far as they were prevented by the defendant's acts or negligence; but the defendant failed to procure any title

*Where an instrument is stated only as inducement, and is not the gist of the action, though a sine qua non of recovery; or where the party has no right to the possession of it; he may prove its loss to let in secondary evidence, without averring such loss in his declaration.*

*In an action by one of two joint* covenantees against the covenantor for fraudulently taking and pleading a discharge from the other covenantee, who had parted with his interest by assignment, and was a bankrupt; the covenant being to procure a grant or patent of 200,000 acres of a tract of land in *Virginia* within the *Louisa* forks of the river *Sandy,* or to return the money advanced by the covenantees; the defendant introduced evidence tending to shew that he laid out the money by the plaintiff's direction in the purchase of *Virginia* land, and then offered, for the purpose of shewing that the entries made by the defendant had been vacated, a transcript of the record of a suit in the high court of chancery in *Virginia* between *A.* and *B.*, complainants, and *C., D.* and the defendant, respondents, whereby the defendant was ordered and decreed to assign to *A.* all his right and title in 300,000 acres, part of a survey made for him of 650,000 acres of land in *Russell* county: Held that such record was irrelevant and inadmissible.

When the effect of an act understandingly done is necessarily injurious to the rights of another, the *quo animo* is not a matter of fact, but an inference of law.

(a) See a more detailed statement of the declaration in a former suit between the same parties, for the same cause of action, in 4 *Day's Ca.* 6 to 9.

to the land, and then refused to repay the money advanced. In *May* 1801, the defendant, for the purpose of defrauding the plaintiff of his claim for the money advanced by him on that part of the covenant which he yet retained, applied to *Taylor,* whom he knew to be a bankrupt, and procured from him a general release, which the defendant afterwards pleaded in bar of an action brought in the name of the plantiff and *Taylor* against him on the covenant; in consequence of which the plantiff suffered a non-suit. In one of the counts, the covenant was averred to be lost by time and accident; but there was no averment of the loss of the assignments to *Gilbert.*

The cause was tried at *Middletown, July* term 1814, before *Swift, Brainard* and *Baldwin,* Js.

On the trial, the plaintiff did not produce the assignments, but offered to prove that they were lost, and then to prove their contents. The defendant objected to this evidence, insisting that as the assignments were not alleged in the declaration to be lost, or out of the power of the plantiff, it was indispensable that he should produce them. The court overruled the objection, and permitted the plaintiff to give evidence of the loss of the assignments and of their contents.

In the progress of the cause, the defendant offered to prove, that the plaintiff accompanied the defendant to *Richmond* in *September* 1795, to see to the laying out of the money; that on their arrival there, they discovered that land-warrants had been previously taken out, and entries thereof made on the land in contemplation, by *James Swan* and *Alexander M'Rae;* that the defendant was thereupon about to return without laying out the money, but the plaintiff advised and directed him to purchase land-warrants and make entries on the land, which he accordingly did, and thereby expended the money advanced to him for that purpose. To establish these facts, the defendant introduced the testimony of *John Taylor* and the deposition of *Elizur Wolcott. Taylor* testified, that the plaintiff told him, at the time of entering into the covenant with the defendant, that he the plaintiff was going to *Virginia* with the defendant; that the witness remonstrated on account of the short credit of sixty days on which they had taken up the money advanced to the defendant; that the witness consented on the representation by the plaintiff of the importance of his seeing the money laid out;

New-Haven,
November,
1814.

that the plaintiff thereupon went to *Virginia*, and shortly after his return told the witness, that he might thank him that he had any land by the *Wolcott* contract ; for when the plaintiff and defendant got to *Richmond*, *Smyth* had gone away, and the defendant was discouraged, and the plaintiff advised the defendant to go on to the westward and see *Smyth*. *Wolcott* deposed, that in *September* 1795, he went from *Hartford* to *Richmond* in company with the plaintiff and defendant, the defendant's object being to procure *Virginia* land ; that the defendant, as the witness understood from him, expected to meet one *Smyth* from the western part of *Virginia*, and to procure the land by his aid ; that when they arrived at *Richmond* they learned that *Smyth* had been there and returned, but had left a request to the defendant, as the defendant informed the witness, to come on to the westward, and bring land warrants, with a view to procure or make the location they had talked of ; that *Smyth* while at *Richmond*, as the witness understood from the defendant, had made a contract with *Swan* and *M'Rae* to locate a quantity of *Virginia* land ; that these circumstances were the subject of frequent consultation between the plaintiff and defendant ; that the defendant expressed apprehensions that *Smyth's* bargain with *Swan* and *M'Rae* would interfere with his bargain with the defendant, and appeared disposed to relinquish the object of his journey, but the plaintiff advised him to proceed ; that the defendant thereupon took warrants from the land office, and went to the westward, and the plaintiff returned home, having apparently had no other object than to see how the defendant did the business ; and that the plaintiff, on his return, expressed an opinion to the witness, that the defendant would not have purchased the land-warrants, had it not been for the plaintiff's advice. The defendant then offered a transcript of the record of a cause in the high court of chancery in *Virginia*, wherein *Swan* and *M'Rae* were complainants and *Smyth* and the present defendant were respondents, to shew that the entries by the defendant had thereby been vacated, and that by means thereof the money was lost. The bill stated, that *M'Rae*, having stipulated to locate certain lands for *Swan*, entered into an agreement with *Smyth* on the 14th of *September* 1795, in pursuance of which *M'Rae* delivered to *Smyth* land-warrants amounting to 300,000 acres ; that

Coleman
v.
Wolcott.

these were located by *Smyth* in *Russell* county on the lands which *M'Rae* had stipulated to locate ; and that after this, *Smyth,* on the application of the present defendant, and in consideration of a considerable sum of money, assigned these warrants with the entries to him, which were included in a large survey of 650,000 acres, and took in exchange a location on lands in the county of *Lee,* of a different description, and less valuable. The court ordered and decreed the respondents to assign to *Swan* all their right and title in and to said 300,000 acres in *Russell* county. To the admission of this transcript the plaintiff objected ; and the court ruled it out.

Before the cause was committed to the jury, the defendant contended, that the court ought to instruct them, that they must find, in order to subject the defendant in damages, that the discharge alleged to have been taken by the defendant of *Taylor,* was taken with a fraudulent intent to injure the plaintiff. The court, however, charged the jury, that if they found the plaintiff had proved the execution, loss and contents of the covenant between the plaintiff and *Taylor* on the one part, and the defendant on the other ; the execution, loss and contents of the assignments from the plaintiff and *Taylor* to *Gilbert ;* and that the facts of *Taylor's* insolvency, and of the assignments, were known to the defendant when he took the discharge ; they must find for the plaintiff, with reasonable damages : but that if either of these facts were not proved, they must find for the defendant.

It was admitted, that the defendant pleaded the discharge in bar of the suit brought by the plaintiff and *Taylor* on the covenant, and that the plaintiff suffered a nonsuit.

The jury found a verdict for the plaintiff, with 5978 dollars damages. The defendant thereupon moved for a new trial on the ground of error in the interlocutory decisions of the court before stated, and in their charge to the jury. The questions arising on this motion were reserved for the advice of all the Judges.

*N. Smith* and *Gould* in support of the motion. 1. The right of action accrues in consequence of the assignments to *Gilbert ;* for otherwise *Wolcott* might well take a discharge from one of the original covenantees. This was so consid-

ered by the court in their charge to the jury. The right of action, then, being founded on the deeds of assignment, the plaintiff cannot recover without proving them. As he has not stated in his declaration that they are lost, he has laid no foundation for proving them by secondary evidence. The *probata* must be *secundum allegata.* Not having alleged any loss, he cannot prove one. In a former case between these parties, the court considered the loss of the instrument as a material and traversable fact to be submitted to the jury. *Coleman* v. *Wolcott,* 4 *Day's Ca.* 394.

It does not obviate the difficulty that this is an action on the case for fraud, and not on the original contract. The plaintiff has chosen to set up these deeds in his declaration, and to make them the foundation of his action. Though an action might have been sustained in a different form, without stating these deeds, yet having stated them, the plaintiff is bound to prove his allegations.

2. In this action, the defendant may avail himself of any equitable defence. By the original contract it was his duty either to refund the money, or obtain a patent. The testimony of *Taylor* and *E. Wolcott* proved, that the plaintiff went to *Richmond* with the defendant, and directed him to lay out the money as he did; and that without such direction, the defendant would not have laid out the money. If the defendant now can shew that he failed to obtain a patent, not through any fault of his, but because the title to the land was taken away by a decree in chancery, he justifies himself to this plaintiff. *He* cannot complain. Where performance of a covenant is prevented in consequence of an act of the covenantee, it is tantamount to a performance. *Sparrow* v. *Caruthers,* 2 *Stra.* 1236. *Hotham* v. *The East-India Company, Doug.* 272. *Hotham* v. *The East-India Comyany,* 1 *Term Rep.* 638, 645. 2 *New Rep.* 240. c. *in notis.* (*Day's* edit.)

The objection that the record was *res inter alios acta* is inapplicable here. It is sufficient for the defendant to shew *the fact* that such a decree was passed, operating upon the title to this land. Who the parties were is of no moment. In an action by the indorsee of a note against the indorser, the indorsee may give in evidence the record of a judgment against the maker to which the indorser was not a party. So in an action by a surety against his principal, or by a

sheriff against his deputy, the plaintiff in each case may give in evidence the record of a judgment against himself to which the defendant was not a party. Further, the plaintiff in this case was a *privy* to the decree ; for the defendant in relation to the land in question was his *agent.* The decree, therefore, is not only admissible against the plaintiff, but, so long as it remains in force, is *conclusive* upon him.

3. This is an action on the case for *fraud.* The fraud is the very *gist* of the action. Strike out the allegation of *fraudulent intent* in the declaration, and it will clearly be bad. The right of recovery turns upon the *quo animo.* *Tarleton* v. *Fisher, Doug.* 674. *per* Lord *Mansfield. Pasley* v. *Freeman,* 3 *Term Rep.* 56, 63, 65. *Scott & al.* v. *Lara, Peake's Ca.* 227. *Tapp & al.* v. *Lee,* 3 *Bos. & Pull.* 370. Then the fraudulent intent ought to have been submitted as a fact to the jury. The court cannot infer such fact from other facts proved. The fraud must be *actual,* and not *constructive* merely. *Crisp* v. *Pratt, Cro. Car.* 549. *The Chancellor of Oxford's* case, 10 *Co.* 56. *b.* 57. *a. Rex* v. *Huggins,* 2 *Ld. Raym.* 1581. *Peake's Ev.* 4.

*Goddard* and *R. M. Sherman,* contra. 1. It is necessary to allege in the declaration the loss of an instrument, in order to entitle the party to give evidence of such loss, in those cases only where a profert must be made of the instrument, if not lost. A profert of the instruments in question is unnecessary for three reasons. First, it does not appear that they are deeds. Secondly, if they are deeds, yet they are not the gist of the action, but are stated only as inducement ; and in this respect the present case is distinguishable from the former one between these parties. (*Coleman* v. *Wolcott,* 4 *Day's Ca.* 388.) Thirdly, if they are deeds and the gist of the action, yet the plaintiff is not the owner or keeper of them. If these assignments were indorsed on the original covenant, *that* is lost, and the assignments with it ; if on a copy, the plaintiff still has no right to the possession of it. *Bul. N. P.* 249. 1 *Chitt. Plead.* 249. *Banfill* v. *Leigh & al.* 8 *Term Rep.* 571. 573.

2. The decree in chancery was properly rejected. It is to be observed here, that so far as the testimony of *Taylor* and *E. Wolcott* related to the plaintiff's interference in laying out the money, the defendant had the full benefit of it

with the jury; and thus far he has nothing to complain of. Then the title of *Swan* and *M'Rae* was irrelevant, because it did not appear that the land on which the defendant's land-warrants were located was the same land as that which was the subject of the decree.

Further, the record was not evidence in this case to prove any fact, because it was not between the same parties, and might have been procured by collusion. It may shew that the title has gone out of the defendant; but a deed from him would shew the same thing.

3. The charge was correct. It is not necessary, in order to vindicate it, to deny that fraud is the gist of this action; that fraud must be found by the jury; and that the court from mere evidence of fraud stated in a special verdict, cannot infer fraud. Here was abundant evidence of fraud to the jury. It was their province, under the direction of the court, to make the proper conclusion from that evidence. If the facts proved, by the rules of law, sufficiently evinced fraud, it was the right and duty of the court to direct the jury to find for the plaintiff. To illustrate this position, take the familiar instance of an action of trover. If a demand and refusal be stated in a special verdict, the court cannot infer a conversion. But if a demand and refusal were proved to the jury, could not the court tell them, that by the rules of law this was sufficient evidence of a conversion, and direct them to find accordingly? In this case, the defendant could not have taken and pleaded the discharge without intending to defeat the plaintiff's right.

BRAINARD, J. As to the first point. No principle of law requires a man to do what is not presumed to be in his power, nor to state what he is not presumed to know. These assignments were not under the controul of the plaintiff. They were the property of *Gilbert,* and had been, or were presumed to have been, from delivery, in his possession. *Coleman,* at the time of framing his declaration, could not know the state and situation of these instruments. He had a right to presume that they were in existence in the hands of *Gilbert*; and that upon the trial, through the hands and medium of *Gilbert* as a witness, he could have the benefit of them.

Whenever an action is brought directly upon a written

New-Haven,
November,
1814.

Coleman
v.
Wolcott.

instrument, as upon a bond or other specialty, in *England*, the plaintiff is bound in his declaration to lay a profert of it, and to produce it on oyer, if required, otherwise on trial, unless he states as an excuse in his declaration, and, as an essential and substantive fact, its loss or destruction. This of course is a traversable fact, which the plaintiff must first evince, and then prove the contents. The same principles are applicable in this state, with the exception that the plaintiff here is not bound to lay a profert; but whether he does or does not, he is bound when oyer is prayed, and also on the trial, to produce his writing, his specialty, unless in his declaration, he states, and afterwards proves, its loss or destruction. In other words, the difference is merely this: with us, a profert is not necessarily to be laid in form, but necessarily exists by implication, because whether laid or not the defendant is entitled to the same benefit of oyer, and the same production on trial.

In every such case the instrument is not only the *sine qua non* of recovery, but is the very gist of the action, and is within the power or knowledge of the plaintiff. He either knows that he has it in his possession and under his controul as his property, or that it is out of his controul or possession by loss or destruction. There are indeed cases where a deed is the gist of the action, and as such necessary to be set forth and pleaded; and yet oyer is not demandable. Such are deeds of conveyances to uses, and other cases, where the claims are by operation of law.

But an instrument in writing belonging to a third person totally disinterested, although it may indeed be a *sine qua non* as to recovery, can never be the gist of the action, can never be the thing on which the action is brought; a profert of it can never be required; of course, no excuse for the non-production need be made in the declaration. The plaintiff states the instrument in the hands of the party to whom it belongs, and in whose possession it is presumed to be, and for the production of which he depends on the voluntary courtesy of the owner and holder, or on the power and energy of the court.

The court can compel such holder or owner of a written instrument, if necessary for the furtherance of justice, and if within their jurisdiction, to produce it in court on trial as evidence of a fact. But the loss or destruction of such an

instrument may, without averment, be first proved, and then its contents given in evidence.

These assignments are set forth in the declaration, as Lord *Kenyon* expresses it, by way of inducement, in which case, he says, a profert is never necessary. *Banfill* v. *Leigh & al.* 8 *Term Rep.* 571, 573. And in the case of *Raynall* v. *Long* and others, *Carthew* 315. the court say, the plaintiff shall not be compelled to produce the deed, first, because it does not belong to him; secondly, because he hath no remedy at law to get possession of it; thirdly, because he is in merely by operation of law. This was a case in favour of a *cestui que trust.* To this point, on the argument, 1 *Chitty* 349. was cited, I thought, to good effect.

As to the second point. The testimony of *John Taylor* and the deposition of *Elizur Wolcott* form the basis on which it is contended that the transcript ought to have been admitted. This was intended to shew, that the money advanced by *Coleman* had in fact been laid out according to his direction, by *Wolcott,* in the very lands contemplated in the bill and decree in chancery. But on examination of the materials of that basis, I do not see a connexion between them and the case.

*Taylor* says, that *Coleman* gave as a reason for his going to the southward the importance of his seeing the money laid out; and that on his return, he told him he might thank him that he had any land by the *Wolcott* contract. The inference from this, perhaps, might fairly be, that *Coleman* concluded that some lands had been obtained, but what, or where, is totally uncertain. There is no necessary connexion between any such lands and the lands in dispute between *Swan* and others, and *Smyth* and others.

With respect to the deposition of *Elizur Wolcott,* there is very little in it except what he received from the defendant himself. He states of his own knowledge, that *Coleman* went to *Virginia* with *Alexander Wolcott* and himself; that *Coleman's* business regarded *Virginia* lands; that *Coleman* had consultations with *Wolcott,* and advised him to proceed, &c. But the deposition does not identify any lands, nor establish any essential fact. It has no relevancy to the contract between *Coleman* and *Wolcott.* And although on the circuit I was for the admission of the transcript; yet on

HARVARD
LAW SCHOOL
LIBRARY

*New-Haven,*
November,
1814.

Coleman
*v.*
Wolcott.

further consideration, I am convinced that my opinion was then incorrect, and that the record was properly rejected.

As to the third point. The court in the charge direct the jury, that to subject the defendant, they must find the execution, loss and contents of the covenant and of the assignments. These being found, the plaintiff's rights and interests which are liable to be affected, are shewn. They then direct the jury, that they must also find, that at the time of taking the discharge, *Taylor* was insolvent, and that the defendant knew it ; and also, that he had knowledge of the assignments. These being found, the rights of the plaintiff are established. They are then brought home to the knowledge of the defendant, when by using the discharge, which it is admitted he did, he did an act necessarily and inevitably injurious to the rights of the plaintiff. It could have no other possible effect. There could be no room for further inquiry.

When the effect of an act understandingly done is necessarily injurious to the rights of another, the *quo animo* is not a matter of fact ; it is settled, and becomes an inference of law.

I would not, therefore, on either point advise a new trial.

In this opinion the other Judges concurred, INGERSOLL, J. not acting.

New trial not to be granted.