The STATE of Texas, Appellant,

v.

Gene LOCK et al., Appellees.

No. 7239.

Court of Civil Appeals of Texas, Beaumont.

May 13, 1971.

Motion Denied June 10, 1971.

Woodrow Curtis, Austin, Tex., for appellant.

C. L. Snow, Jr., San Antonio, for appellees.

KEITH, Justice.

The State appeals from a judgment entered in an eminent domain proceeding wherein it sued to acquire 43.914 acres of land in Kerr County for use as a right-of-way for Interstate Highway 10. In a jury trial in which only the Carpenter Case issues [State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 201 (1936)] were used, the value of the land taken was found to be $33,150.00, and the damages to the remainder was set at $16,665.50.

Although the first ten points in State's brief complain of the argument of appellees' counsel, we first consider the State's points relating to the reception of evidence during the trial.

The land taken was part of a larger tract of approximately 495 acres fronting on State Highway 27, located some twenty-five miles from Kerrville. Appellees also owned another tract consisting of approximately 68 acres located immediately across

State Highway 27, but no part of this land was involved in the proceeding; however, because of the presence of a water pipe under Highway 27 from appellees' well on the larger tract used to furnish water to the smaller tract, this facet is of later interest in this opinion. Most, if not all, of appellees' improvements were located upon the land taken.

The trial court granted several motions in limine filed by the State, three of which suppressed reference to or any evidence relating to damages which might be sustained by the appellees because of the circuity of travel between their remaining tracts caused by the nature of the new highway, i. e., because it would be a controlled access highway, whereas the existing state highway permitted conventional rural traffic use. By appropriate assignments, the State contends that appellees violated these motions to its injury.

Appellees' valuation witness Stone attempted to testify upon two occasions, once upon direct and once upon cross-examination, that the 68-acre tract would be less accessible to appellees' main tract. In each instance, the court sustained State's objections and instructed the jury to disregard the answer of the witness. Other instances are pointed out by State's counsel, whereby oblique references were made, but the gravamen of the complaint is directed at the testimony of the appellee Gene Lock, given upon cross-examination. The witness, being pressed by State's counsel as to his reasons for placing a damage to his 400-acre remainder at a uniform $100.00 per acre, and asked to respond to an argumentative statement by State's counsel, said:

"A  I don't have the same access on [Highway] 27 that I have now.

"Q  [By State's counsel]  Why don't you?

"A  Because this is the main flow of traffic, now, from coast to coast."

We readily accept State's contention that the motion in limine set out the correct rule of law and that evidence offered in violation thereof was inadmissible. State v. Baker Bros. Nursery, 366 S.W.2d 212, 214 (Tex.Sup., 1963). But, we are not favorably impressed with the point now urged. At best, whether or not the witness deliberately violated the court's prior ruling was a close question for determination by the trial court and the necessity for the ruling had been precipitated by questions from State's counsel. The witness was being examined vigorously and his answer, while possibly a technical violation of the court's preliminary ruling, was corrected immediately by the trial court in instructing the jury to disregard the answer. Point eleven is overruled. Rule 434. See also, City of Houston v. McFadden, 420 S.W.2d 811, 814 (Tex.Civ.App.—Houston, 14th, 1967, error ref. n. r. e.).

We face a more serious question, however, when we come to a consideration of State's point twelve.* The trial court denied one of the State's motions in limine which would have prevented the introduction of testimony as to the existence of a water line under Highway 27 from the land taken to the 68-acre tract situated across Highway 27 therefrom. This water line furnished the only source of water to the 68-acre tract from a well located upon the property taken for the new highway. The practical result would be that the 68-acre tract, which would not be touched otherwise by the State's actions in constructing the new highway upon the land taken would be left without water. Our record

---

* Point twelve: "The trial court erred in admitting over objection by the State evidence of the existence and use by condemnees of a water pipeline which crossed State Highway 27 in furnishing water from a well on the larger north tract to the smaller south tract of condemnees, because the condemnees had no legal right to maintain said line across the State Highway, and was merely a privilege, remaining in place at the sufferance of the State."

shows that long before these proceedings, the State acquired fee simple title to the portion of Highway 27 under which the water line was run and there was no reservation in the deed of an easement for the water line in favor of Lock's predecessors in title, nor do we find any evidence in our record indicating any other legal right for its existence in the roadway.

The State's petition for condemnation did not make mention of this water line to the 68-acre tract, yet as part of the original evidence, appellees' witness Stone was permitted to testify as to damages to the tract since it would be left without water when the new highway is completed. Stone's first reference to the existence of the water pipe prompted State's counsel to object in this manner: "Just to preserve the record, I would like to object to the witness taking into consideration the fact that the water pipe is there." The court responded in kind, saying: "Let there be an objection for the record, and it will be overruled." The witness continued by giving testimony that to his knowledge the water line had been so located for more than forty years, long prior to the time appellees or the State acquired their respective titles to the lands or the roadway.

The witness then included the 68-acre tract *with* water in the "damage to the remainder" of appellees' land and fixed a "before and after" value of all of appellees' lands remaining after the taking, $146,000.00 versus $117,400.00, or total damage of $38,600.00. Without further objection from State's counsel, the witness repeated the statement of damage to the 68-acre tract by saying: "In my opinion, it would certainly damage the sixty-some odd acres; for one thing, no water." Later, this transpired:

"Q [By appellees' counsel] * * * In other words, after the [new] highway is there. I believe you told me one of the reasons was there would be no water over here.

"A Right.

"Q He had water there before?

"A Right.

* * * * * *

"Q And do you think that, as a result of this part being taken out here, that this remainder is going to require Mr. Lock to do some things on it?

"A Yes, sir.

"Q What are those things, in your opinion?

"A They have to put water over there. They have to have water over there.

"Q What other things?

"A They will have to drill a well."

Appellees' witness Lewis made it clear that he also considered that one of the elements of damage to appellees was the destruction of the water supply to the smaller tract. The only objection to this testimony was the allowance by the trial court of a "running bill * * * with respect to the existence and ownership and use of the sixty-eight (68) acre tract on the south side. * * * And the existence of the water line, also."

Appellee Lock testified that he included in his valuation not only the part remaining out of his larger 495-acre tract after the construction of the highway, but the 68-acre severed tract. He made it clear that the loss of water supply to the 68-acre tract was one of the elements of damage which he took into consideration.

Although the State offered three expert witnesses upon value, none gave testimony which took into consideration the continued presence of the water line. Instead, each was asked for his opinion as to value *without water*. The range of the damage to the remainder, as reflected by the testimony of the several opposing witnesses, is extremely broad. For instance, appellee Lock placed the difference at more than $65,000.00, whereas State's witness Bremmer placed the difference at less than $1,600.00. The jury found the difference in value to

be $16,665.00. Not all of these differences, it is certain, are attributable to the presence or absence of water on the smaller tract; but the stubborn fact remains that water was considered by appellees' witnesses and was omitted from consideration by those testifying on behalf of the State.

The State did not make a motion to strike the testimony now complained of; it did not object to the special issues submitting damage to the appellees' remainder; nor did it request a special instruction on the presence of the water line. Instead, the present complaint finds its base in the amended motion for new trial. In so choosing to present the point the State has, indeed, chosen the hard road.

■ Even though the water line had been in existence under Highway 27 for the forty years mentioned by appellees' witness Stone, such fact, standing alone, did not show either appellees' title thereto or a right to the continued use thereof. Article 5517, Vernon's Ann.Civ.St.; Brazos River Authority v. City of Graham, 163 Tex. 167, 354 S.W.2d 99, 109 (1961). From this premise, the State argues that appellees had no legal right to have the line under the State's property in Highway 27, consequently, damage flowing from its destruction was damnum absque injuria; yet, as it contends, such was permitted to go to the jury for consideration on the ultimate issue of damage to the remainder.

■ Supporting the position so taken, State's counsel relies heavily upon Hill Farm Inc. v. Hill County, 436 S.W.2d 320 (Tex.Sup., 1969), wherein the court observed that neither party claimed to have an easement from the owner of the fee authorizing the maintenance of the road or the water line (436 S.W.2d at 321). Here, under our record, the State owned the fee to the right-of-way of Highway 27, and appellees have shown no legal authority for the continued presence of the water line on the State's property. Upon authority of

*Hill Farm,* we conclude that appellees' water line under the State's highway was "an invasion of the public easement in the road" (436 S.W.2d at p. 324), and that appellees had no such right in its continued use as would support an award of money damages.

However, we confine our discussion to the precise point raised by the State in its brief, namely, that appellees, having shown no legal right to maintain the water line under the State Highway 27, had no property right therein for which they were entitled to be compensated. By the filing of the suit to condemn appellees' property, the State admitted that appellees had good title to the property described in the petition. Only with this admission did the County Court have jurisdiction over the subject-matter of the suit. McInnis v. Brown County Water Improvement Dist. No. 1, 41 S.W.2d 741, 744 (Tex.Civ.App.— Austin, 1931, error ref.); Thompson v. Janes, 151 Tex. 495, 251 S.W.2d 953, 955 (1952). But, the State's petition did not include the right-of-way of Highway 27 and no such admission of title was made with reference thereto. And, the parties concede that the County Court was without jurisdiction to determine title to such right-of-way or appellees' right to maintain the water line in the roadway.

As is proper, the State does not assign as error the action of the trial court in overruling its motion in limine which would have suppressed any testimony concerning the existence or the use of the water line. As was said in St. Paul Fire & Marine Insurance Co. v. Escalera, 385 S.W.2d 477, 480 (Tex.Civ.App.—San Antonio, 1964, error ref. n. r. e.):

"Before the overruling of this motion in limine could constitute reversible error at least two things must happen; first, the matter sought to be suppressed must arise during the trial, and the party who originally urged the motion in limine must make timely objection."

For, as was said in State v. Cave, 430 S.W. 2d 692, 694 (Tex.Civ.App.—Austin, 1968, no writ):

> "The trial court was not required to determine in advance of the trial the admissibility of the evidence the State described in its motion in limine."

Appellees contend, in substance, that the point has not been properly preserved for our review, and that the State has waived the error (if any) by introducing similar testimony; and, in any event, according to appellees, reversible error is not shown. We will treat the reply in the order stated.

■ The State's objection to the receipt of the testimony concerning the water line was couched in most general terms and was offered in a casual manner. The trial court, however, had theretofore overruled State's motion in limine and State's counsel had little reason to believe that an elaborate objection even if followed by a vigorous legal argument would be successful. Under the circumstances, we are of the opinion that the objection was sufficient to preserve the point. J. I. Case Threshing Mach. Co. v. O'Keefe, 259 S.W. 222, 226 (Tex.Civ. App.—Amarillo, 1924, error dism.); Crispi v. Emmott, 337 S.W.2d 314, 318 (Tex.Civ. App.—Houston, 1960, no writ).

After this testimony was received over the State's objection, as noted above, State's counsel sought to minimize the impact thereof. This was done in several ways: appellees' witnesses were cross-examined on the subject; the State's deed to the right-of-way of Highway 27 was offered in evidence to show that appellees' predecessors in title had not reserved a water line easement; and, an employee of the Highway Department was examined concerning the possibility of appellees procuring a permit for a new water line across the proposed Interstate Highway.

■ Appellees contend that such action on the part of State's counsel amounted to a waiver of the objection. We disagree.

The recent opinion of State v. Chavers, 454 S.W.2d 395, 398 (Tex.Sup., 1970) is dispositive, the court saying:

> "If incompetent evidence is admitted over proper objection, the objecting party is not left to suffer injury in the instant trial and take his chances on appeal and retrial. He may defend himself without waiving his objection. He may explain or rebut or demonstrate the untruthfulness of the incompetent evidence. [Citations omitted.]"

Nor, are we persuaded that the "State did more than defend itself" in its effort to rebut the testimony. *Chavers*, supra.

■ The question of error having been resolved, we are required to assess the harmful effect of its erroneous admission. In this task, we encounter little difficulty since the testimony permeates the entire record. Appellees' witnesses on value all included the present availability of water to the 68-acre tract and that its source was destroyed by the taking of the land situated across Highway 27 in arriving at the damage to the remainder. We have no method whereby we can eliminate such erroneous testimony and have *any* competent testimony in the record which would support an award for damages to the remainder. Having reviewed the entire° record, we are of the opinion that the error "was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." Rule 434. Gomez Leon v. State, 426 S.W.2d 562, 565 (Tex.Sup., 1968). Or, to adopt the language of Justice Reavley in *Chavers*, supra: "We believe the verdict was affected by this incompetent evidence."

■ Our action in sustaining State's point twelve makes it unnecessary for us to consider the remaining points in State's brief. However, in view of another trial upon the merits, we would be remiss in our duty if we did not remind appellees' counsel that the points in the State's brief challenging the argument are extremely serious. In a routine trial of a condemnation case,

there is no place for an argument which brings in new evidence, berates counsel for the opposing party, or seeks to inject prejudice against one party because of its supposed wealth or power. As was said in Louisiana & Arkansas Railway Company v. Mullins, 326 S.W.2d 263, 268 (Tex.Civ. App.—Texarkana, 1959, error ref. n. r. e.) :

> "Brinkmanship in this field has little to recommend it as juries are composed of sensible men and women and they usually fully discount the high-flown adjectives, purple prose, sophistry, and hyperbole of counsel in his ardor."

We respect the right, indeed the duty, of counsel to represent his client in the courtroom and to do it with vigor. However, we are in full accord with Chief Justice Calvert's comments found in Texas Employers' Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856, 859 (1954), which are worthy of repetition here:

> "We realize that in the course of a hotly contested trial lawyers are apt, even prone, to 'pull off the gloves'; but lawyers are officers of the court and proper and ethical conduct requires that there be limitations on the extent to which counsel may go in the injection of prejudicial and inadmissible matters, whether by way of cross-examination of witnesses or by way of jury argument. When these limits are transgressed a trial ceases to be a test of right and wrong by standards of law in a court of justice and becomes a 'catch-as-catch-can, no-holds-barred' spectacle not unlike a modern wrestling match."

Such complaints as are made by the State in its first ten points should find no basis in a record of the new trial which we order.

Our prior holding makes it unnecessary for us to discuss State's point fifteen, wherein complaint is made of the reception of evidence of items of damages which were non-compensable under the law. Specifically, the State complains of the receipt of evidence that appellees' signs advertising their quarter horse operation would not be as clearly visible from the new highway as from the old, that their facilities would be hidden, etc. As appellees' witness Lewis put the matter, because of a 23-foot cut immediately in front of appellees' property, "traffic won't be able to read his sign." He said, further:

> "—it would be about the same thing as taking it off of the commercial property and putting it back on a county road, back somewhere. Taking it away from being commerical when you raised it up where people on the highway couldn't see it."

Thus, according to appellee himself, his "business would be hurt."

 Upon another trial, similar evidence should not be admitted over a proper objection. State v. Zaruba, 418 S.W.2d 499, 502 (Tex.Sup., 1967).

For the error pointed out, the judgment of the trial court is reversed and the cause remanded.