Jerry W. FILLER and James Thom, Individually, and Action Sports, Inc., a North Dakota Corporation, Plaintiffs and Appellants,

v.

The CITY OF MINOT, a municipal corporation, the State of North Dakota, and Walter R. Hjelle, State Highway Commissioner of North Dakota, Defendants and Appellees.

Civ. No. 9576.

Supreme Court of North Dakota.

June 18, 1979.

Bosard, McCutcheon, Kerian, Schmidt, Holum & Rau, Minot, for plaintiffs and appellants; argued by Jon R. Kerian, Minot.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendants and appellees, argued by Peter S. Pantaleo, Bismarck.

SAND, Justice.

The plaintiffs (landowners) appealed from a judgment of the district court dismissing their "inverse condemnation" action against the State of North Dakota and the City of Minot (State). The landowners had sought consequential damages for the alleged diminution of the market value of their property arising from the construction of a controlled-access intersection south of Minot. The district court concluded that, as a matter of law, loss of business, loss of traffic, loss of visibility, and nuisances allegedly suffered by the landowners were

not compensable, and also that access to the landowners' property was reasonable. We reverse in part and remand.

The landowners owned commercial property located south of the former intersection of Highway 83 and the Highway 2 and 52 bypass. They purchased the property in 1971 and since that time have rented it to Action Sports, Inc., a corporation owned by the landowners which sells recreational vehicles and boats.

Prior to 1961, Highway 83, which runs north and south through Minot, was a two-lane highway located within the 66 feet of section line right of way. The subject property fronted the west side of Highway 83 and was owned by the Eighty-Three Corporation. In 1961, plans were carried out to convert a portion of Highway 83 into a four-lane controlled-access highway. In order to execute those plans, the State of North Dakota acquired from the Eighty-Three Corporation a 30-foot strip of property across the front of the subject tract for access control and construction of a frontage road. The right of way plat filed by the Highway Department initiating this acquisition indicated three points of access between the service road and Highway 83 in the vicinity of the subject property; one located 300 feet north of the property, a second located 875 feet south of the property, and a third located 690 feet still further south.

In 1976 the State started construction of a new partial cloverleaf intersection of Highway 83 and the Highway 2 and 52 bypass. The new intersection was located just south of the subject property. Highway 83 was raised, widened, and carried across the Highway 2 and 52 bypass by means of an overpass. The previously mentioned points of access between the service road and Highway 83 were closed and all the properties for a distance of 2000 feet south of the subject tract were acquired by the State for the construction of the cloverleaf. The subject tract is now located on the distal end of a cul-de-sac, the service road extending to the south of the tract having been removed.

After elimination of the access points between the service road and Highway 83, the only means of access to the subject tract is a road 350 feet west of Highway 83 which intersects with a portion of a portion of the old Highway 2 and 52 bypass. To reach the subject tract it is necessary to travel 160 feet south from this intersection, east 250 feet, and then south again another 300 feet.

The landowners commenced an inverse condemnation action against the State by filing a summons and complaint on 6 April 1978. The State moved for partial summary judgment and on 19 July 1978 the district court entered an order granting the State's motion. As the basis for the order, the district court stated that "loss of business, loss of traffic, loss of visibility, and nuisances allegedly suffered" by the landowners were, as a matter of law, not compensable.

A trial was held 24 August 1978 on the issue of access, after which a judgment was filed dismissing the landowners' action. The landowners appealed from this judgment.

The issues we must determine are: (1) Was the partial summary judgment properly granted, and (2) Did the landowners suffer a compensable injury as the result of the alteration of access from the subject tract.

The landowners sought compensation for the loss of access between their property and the abutting public highway.

 A property owner's right of access to an abutting highway or street has been recognized by this court. *Chandler v. Hjelle,* 126 N.W.2d 141 (N.D.1964); *Cummings v. City of Minot,* 67 N.D. 214, 271 N.W. 421 (1937); *King v. Stark County,* 66 N.D. 467, 266 N.W. 654 (1936). Such property right, however, does not entitle the landowner to direct access at any and all points between the subject property and the highway. The State, in the exercise of its police powers, may impose regulations and restrictions, or even prevent access at certain points, where such control is done in the interests of public safety. Thus, while

an abutter has a right of access to an adjoining highway, such right is subject to the superior interests of the state. *King v. Stark County, supra.* In situations where restrictions and regulations have been imposed upon the access of abutting owners, the question becomes one of whether or not, under the existing facts and circumstances, a reasonable means of access remains. If the abutter has free and convenient access to his property, and his means of ingress and egress are not substantially interfered with, he has no cause of complaint. *See Johnson v. United States,* 479 F.2d 1383, 202 Ct.Cl. 405 (1973); *Balog v. State, Department of Roads,* 177 Neb. 826, 131 N.W.2d 402 (1964); 2A Nichols on Eminent Domain § 6.444[2]; 4A Nichols on Eminent Domain § 14.2431; Annot. 42 A.L.R.3d 13.

The State argued §§ 24–01–31 and 24–01–32, North Dakota Century Code, provide it with the necessary police power to acquire and regulate access on controlled-access highways. Those statutes provide, in pertinent part:

"24–01–31. Design of controlled-access facility.—The highway authorities of the state, or any county, or municipality are authorized to so design any controlled-access facility and to so regulate, restrict, or prohibit access as to best serve the traffic for which such facility is intended. . . . No person shall have any right of ingress or egress to, .from or across controlled-access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified from time to time."

"24–01–32. Acquisition of property and property rights.— . . . the highway authorities of the state, or any county, or municipality may acquire private or public property rights for controlled-access facilities and service roads, including rights of access, air, view, lights, and such advertising rights outside of the right of way as may be determined by the commissioner to be in the public interest, by gift, devise, purchase, or condemnation . . . . .."

The State took the position that when it acquired access from the Eighty-Three Corporation in 1961 for the construction of a controlled-access facility, it also acquired the right, under the above statutes, to subsequently alter or eliminate access points along the controlled-access facility. Although the right of way plat on file showed three points of access between the frontage road abutting the landowners' property and Highway 83, the State argued the supplements filed relating to the same plat do not show the State as having given up its right of access control. Thus the State concludes when it acquired the right of access control from the Eighty-Three Corporation it had the right, in the exercise of its police powers, to alter or amend such access without being liable for the taking or damaging of any compensable interests of the landowners.

Although courts have said that if regulations or restrictions fall within the State's "police power" no compensable loss has occurred, the distinction is not always clear. In the words of the Minnesota Supreme Court:

"While courts have assumed that designating a regulation an exercise of police power prevents compensation by eminent domain proceedings, for practical purposes this is simply a convenient way of describing which activities confer a right to damages and which do not. The prohibiting or limiting of access to a highway may well be an exercise of police power in the sense that it is designed to promote traffic safety, but at the same time it may cause compensable injury to an abutting owner." *Hendrickson v. State,* 267 Minn. 436, 127 N.W.2d 165, 170 (1964).

In the facts of this case, the State did not acquire the right to completely eliminate access between the subject tract and Highway 83 when the 30-foot strip of land and access control were purchased from the Eighty-Three Corporation in 1961. We must assume, in either a settlement or an eminent domain action in which access control was acquired and where the record does

not indicate otherwise, that any frontage road adjacent to the subject tract, as well as any access points between such frontage road and the abutting highway, were relied upon in mitigation of damages for the loss or modification of access.

 In purchasing access control for a project, the State does not necessarily acquire the right to indiscriminately alter or eliminate access at future dates without payment of compensation, but merely pays for damages suffered as the result of access alteration arising from that project. Because a landowner has only a right of reasonable access to his property, if a frontage road and access points are provided, it is possible that following completion of a project the subject tract may suffer only nominal or no compensable damages as the result of access control. Where, however, access control is subsequently modified to the extent that access is no longer reasonable or is substantially more unreasonable, the abutter has suffered a new injury for which he has never been compensated and is thus entitled to compensation at this later date.

The assumption that access to a subject tract provided by a frontage road and access points between a frontage road and the abutting highway are used in mitigation of damages is dictated by earlier opinions of this court that have indicated the measure of damages for the loss of pre-existing access is the difference in market value immediately before and immediately after the access change. *Sauvageau v. Hjelle,* 213 N.W.2d 381 (N.D.1973); *Chandler v. Hjelle, supra. See also Hurley v. State,* 82 S.D. 156, 143 N.W.2d 722 (1966); *Hendrickson v. State, supra.* Because the amount of dam-

ages is determined by the change in market value, that amount is obviously affected by mitigating factors such as alternate points of access as those factors will be contributing determinations in any changes in market value.

In this case, the modification of the frontage road adjacent to the landowners' property was the second step of a two-step impairment of the abutter's right of access. The first step occurred in 1961 when Highway 83 was converted into a controlled-access facility and a 30-foot strip of property was acquired for the construction of a frontage road. Presumably, the owners of the subject tract were compensated not only for the property taken but also for any damages they sustained as the result of the alteration of access to Highway 83. The second step occurred in 1976 when the access points between the frontage road and Highway 83 were closed. The question now becomes one of whether or not the second impairment was of such a nature as to require compensation to the landowners.[1]

 This court has stated a property owner is entitled to damages arising from interferences with his property rights of light, air, and access caused by the lawful improvement of a street in a manner which could not have been reasonably anticipated at the time of the dedication of the street, and for which damages have not been waived. *Kenner v. City of Minot,* 98 N.W.2d 901 (N.D.1959); *Cummings v. City of Minot, supra.* We conclude the same rule applies when the State has acquired an interest in a landowner's property rights not by means of a dedication but through either a settlement agreement or an action

---

1. A question exists as to whether or not the service road adjacent to the landowners' property can properly be termed a "frontage road" since its modification in 1976. That term is defined in § 24-01-01.1, NDCC, to mean:

 " . . . a local street or road auxiliary to and located on the side of an arterial highway for service to abutting property and adjacent areas and for control of access."

 The service road in this case will not provide any direct access between the subject tract and Highway 83. Abutting property owners enter-

 ing upon the service road must leave it and use other streets and roads to gain access to Highway 83. If this service road is no longer a frontage road it is no longer a part of the controlled-access Highway 83 facility. See *Teachers Insurance and Annuity Association of America v. City of Wichita,* 221 Kan. 325, 559 P.2d 347 (1977). Consequently, the 1976 modification of the frontage road may not have been merely an alteration of access between the subject tract and Highway 83 but actually a complete elimination of access between the two.

in eminent domain. If a landowner's property rights are interfered with by a lawful improvement of a street or road in a manner that could not have been reasonably anticipated at the time of the condemnation or settlement, the landowner is entitled to damages arising from such interference.

The determination of whether or not there has been a taking or damaging of private property has generally been considered by this court to be a question of law. *United Power Association v. Heley,* 277 N.W.2d 262 (N.D.1979); *Guerard v. State,* 220 N.W.2d 525 (N.D.1974). The trial court is required to conclude if the claim of damages arises because of the disturbance of a right, either public or private, which the owner enjoys in connection with his property and which gives it additional value, and by reason of such disturbance he has sustained a special damage with respect to his property in excess to that sustained by the public generally. *United Power Association v. Heley, supra* at 267. Such requires the application of rules of law and thus is a "question of law." *Slope County v. Consolidation Coal Company,* 277 N.W.2d 124 (N.D.1979).

In the usual instance, once a trial court determines a private right has been disturbed, the only function remaining for the finder of fact is to assess the level of damages. *United Power Association v. Heley, supra* at 267. In cases such as the one before us, however, where a question exists not only of whether or not a property right has been interfered with but also whether or not such interference was unreasonable and if so whether or not within the contemplation of the parties at the time of an earlier acquisition it becomes the duty of the fact-finder to make these latter determinations. *Guerard v. State, supra.* These are determinations drawn by way of reasonable inference from the evidence as distinguished from its legal effect or consequence and thus are considered findings of fact. *Slope County v. Consolidation Coal Company, supra.*

In this case it was the duty of the trial court to determine if there had been a disturbance of a property right giving rise to a claim of damages. As previously discussed, the landowners had a property right of access to the abutting Highway 83 which was disturbed first by the 1961 access-control project and later by the modification of the frontage road and the elimination of access points between the frontage road and Highway 83. It then became a question of fact as to whether or not the landowners' new access to Highway 83 was reasonable and if unreasonable whether or not such modifications were reasonably anticipated at the time Highway 83 was converted to a controlled-access facility. Only when reasonable minds cannot differ on these findings of fact do they become conclusions of law for the court to decide. *Slope County v. Consolidation Coal Company, supra.*

Although the district court in its conclusions of law, stated "that access to the plaintiffs' [landowners'] property was and is reasonable," we nevertheless treat it as a finding of fact. *Jahner v. Jacob,* 233 N.W.2d 791 (N.D.1975).

In reviewing findings of fact we are limited by the clearly erroneous rule of Rule 52(a), North Dakota Rules of Civil Procedure, however we will overturn such findings when, after reviewing the entire evidence, we are left with a definite and firm conviction that a mistake has been made. *In re Estate of Elmer,* 210 N.W.2d 815 (N.D.1973). After reviewing the record in this case, we are left with such a definite and firm conviction.[2]

Prior to construction of the new interchange, an access point to Highway 83 was located within 300 feet to the north of

---

2. In this case the judge was familiar with the property and the road network. However, the court did not give due regard to the rule of law regarding the landowners' right of access to the abutting highway and this apparently reflected in the *labeled* findings of fact and the *labeled* conclusion of law which, in reality, is a finding of fact. The evidence does not support a finding of fact that access was reasonable.

the subject property and within 875 feet to the south of the property. After construction, the service road abutting the subject tract no longer has access points on Highway 83, but rather has one access point onto the Highway 2 and 52 bypass, a distance of 710 feet from the subject tract. To reach Highway 83 from the subject property one must take a circuitous route of approximately 1060 feet. Although the trial court was correct in ruling that circuity of travel is not, in itself, a compensable item of damages, it is a factor to be considered in determining the reasonableness of access. *See Guerard v. State, supra.*

We also find loss of patronage may be an indication of unreasonableness of access although such evidence (loss of patronage) must be received with caution as it may be attributable to factors other than unreasonableness. Where the level of traffic [3] on the abutting highway, as in this case, appears to remain the same but the patronage of the subject property has decreased materially since construction of the improvement, the loss of patronage may be evidence indicative of unreasonableness of access. *Hendrickson v. State, supra. See also Little v. Burleigh County,* 82 N.W.2d 603, 614 (N.D.1957).

Also indicative of unreasonableness is diminution in the value of the landowner's property resulting from the alteration of access. *Johnson v. United States, supra.* The landowners' expert witness testified that as a result of the change in access in this case, the subject tract's highest and best use was no longer that of a retail establishment but rather as a wholesale or warehouse establishment and consequently had suffered a decrease in market value of $49,150.

Considering the circuity of travel to reach the subject tract, the property's loss of patronage, the diminution of the value of the property, and the fact the service road abutting the subject tract no longer has direct access to Highway 83, we conclude the district court was in error in finding the landowners' access was reasonable. Accordingly we reverse.

On remand, a finding by the trier of fact must be made as to whether or not the modification of access resulting from the construction of the new intersection was one within the reasonable contemplation of the parties when the State acquired the 30-foot strip of property and the right of access control in 1961. If the recent modification was not reasonably contemplated by the parties in 1961, the fact finder must also make a determination of the level of compensable damages arising therefrom.

Before trial the district court granted a motion for partial summary judgment against the landowners on the ground that loss of business, loss of traffic, loss of visibility, and nuisances allegedly suffered by the landowners were, as a matter of law, not compensable. We now review the propriety of granting that motion.

Although we have stated evidence of loss of business and loss of traffic may be admissible to establish that a subject tract has been damaged, it is well settled that such losses are not in themselves compensable. Accordingly, summary judgment on those issues was properly granted. *Jamestown Plumbing & Heating Co. v. City of Jamestown,* 164 N.W.2d 355 (N.D.1968).

The district court also granted partial summary judgment against the landowners' nuisance claim which they alleged resulted when access to their property was completely cut off for a period of time

3. Although an abutting owner has no interest in traffic flow over the highway, this does not mean that if traffic is using the highway an abutting owner may not profit from its flow. If travelers who were formerly attracted to the landowner's place of business do not find their way to the property because of lack of access, manifestly it is the alteration of access which has reduced the patronage, resulting profits,

and therefore its valuation as commercial property. While the State is under no obligation to send traffic past the landowner's property, as long as the traffic does pass the landowners are entitled to avail themselves to it in common with other abutting owners. *State v. Wilson,* 103 Ariz. 194, 438 P.2d 760, 42 A.L.R.3d 134 (1968).

during the construction of the new intersection. The State argued that such temporary injury is not compensable. We disagree and adopt the general rule as stated in 2A Nichols on Eminent Domain § 6.4442[2]:

"When a street is so obstructed during the construction of a public work that access to abutting property is wholly cut off, the fact that the injury is only temporary is generally held to be no reason for denying the owner compensation. However, when access, though rendered difficult and inconvenient, is not wholly cut off, the owner is denied compensation. This is so even if there is such an injury to the use of the property for business purposes during the construction of the work as to materially affect the value of the leasehold interests, and this injury is due to the presence of structures in the street that would undoubtedly constitute a ground for compensation if they were maintained there permanently. . .

. . . . .

". . . However, if the temporary obstruction is a result of unreasonable, unnecessary, arbitrary or capricious acts or conduct by the one in charge of the improvement or construction, the abutting landowner has a right of action for damages resulting from such interference with access to his property."

In accordance with the above-stated rule, partial summary judgment was improperly granted on the issue of nuisance in this case where the landowners' alleged access to their property was completely cut off for a period of time during construction. Although the injury was only temporary, it nevertheless was a compensable injury and therefore was not proper grounds for a complete denial of relief. The duration of the cut off may make the difference in damages being nominal or real.

The landowners also alleged damages arising from the change in the grade of Highway 83 and a resulting loss of visibility between the traffic on the highway and the subject property. They contend that as an abutting property owner, they have a property interest in being seen by the traffic from the adjacent highway. Although this court has allowed landowners compensation for loss of the right of view from their property, we decline to extend that principle to create a compensable right to be viewed from the abutting highway. Rather we follow the position of those courts that have held that there is no compensable right to be seen from an abutting highway. *State v. Lock,* 468 S.W.2d 560 (Tex.Civ.App.1971); *Acme Theatres, Inc. v. State,* 26 N.Y.2d 385, 310 N.Y.S.2d 496, 258 N.E.2d 912 (1970); *Commonwealth, Department of Highways v. Strahan,* 431 S.W.2d 871 (Ky.1968); *Kansas City v. Berkshire Lumber Company,* 393 S.W.2d 470 (Mo. 1965). *Contra, People v. Wasserman,* 240 Cal.App.2d 716, 50 Cal.Rptr. 95 (1966); *Bramson v. Berea,* 62 Ohio Op.2d 332, 33 Ohio Misc. 186, 293 N.E.2d 577 (1971); *Murphy v. Town of Westport,* 1 Conn. 292, 40 A.2d 177, 156 A.L.R. 568 (1944); *Kelbro, Inc. v. Myrick,* 113 Vt. 64, 30 A.2d 527 (1943). We conclude partial summary judgment on the issue of loss of visibility was properly granted.

On remand of this case the landowners should be allowed to show the modification of access between their property and Highway 83 was not reasonably anticipated at the time access control was acquired by the State in 1961. The landowners should also be allowed to present evidence on the issue of nuisance resulting from the temporary elimination of access to their property during construction of the new intersection.

Reversed in part and remanded.

ERICKSTAD, C. J., and PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, dissenting.

The present counsel for Filler did not try this case. It was tried to the court without a jury. Every bit of evidence offered during trial was received. Prior counsel then rested and has never requested permission to reopen. Justice Sand has concluded that Filler should again have the opportunity to show that access to his property is not reasonable. Filler's prior counsel had that opportunity and produced witnesses who testified that access was not reasonable in their

opinion. The trial judge, being the final judge of credibility, found that access to Filler's property is reasonable. Rule 52(a), N.D.R.Civ.P. applies.

Undoubtedly, present counsel would have used different trial tactics, perhaps different witnesses, and different argument. But it is not our function on appeal to provide an opportunity for a new attorney in the case to substitute new and different theories unless there are unusual circumstances. *See Rummel v. Rummel,* 265 N.W.2d 230 (N.D.1978). I see no unusual circumstances in this case.

The special findings of fact made by the trial judge were clear and specific and disclose the basis for the conclusions of law and the judgment that was entered. Although I may not have made the same findings of fact as were made by the judge who heard the witnesses if I had been the trial judge, I have read the transcript and from all of the evidence therein, I do not reach a definite and firm conviction that the trial judge made a mistake in any of the findings.

The judgment should be affirmed.